# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

|  |  |
|---|---|
| COMMONWEALTH OF KENTUCKY, EX REL. ATTORNEY GENERAL, RUSSELL COLEMAN,<br><br>*Plaintiff*,<br><br>v.<br><br>KALSHIEX LLC, KALSHI INC., KALSHI KLEAR INC., KALSHI KLEAR LLC, KALSHI TRADING LLC, ROBINHOOD MARKETS, INC., ROBINHOOD DERIVATIVES LLC, WEBULL CORPORATION and COINBASE FINANCIAL MARKETS, INC.,<br><br>*Defendants*. | Case No.: |

## NOTICE OF REMOVAL

Defendants Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC (together, the "Kalshi Defendants") hereby remove the above-captioned action from the Franklin Circuit Court of the Commonwealth of Kentucky, Case No. 26-CI-00689, to the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. §§ 1331, 1441, and 1442. Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC (together, "Robinhood") and Coinbase Financial Markets, Inc. ("Coinbase") consent to removal. *See* Exhibits 1–2. Subject matter jurisdiction is present under 28 U.S.C. §§ 1331 and 1442.

By filing this Notice of Removal, the Kalshi Defendants do not waive any defenses they have to this action whether in state or federal court, including, but not limited to, improper service of process and/or lack of personal jurisdiction. The Kalshi Defendants reserve the right to amend or supplement this Notice of Removal.

In support of this Notice of Removal, the Kalshi Defendants state as follows:

I.    **BACKGROUND**

A.    **Defendants**

1.    KalshiEX LLC ("KalshiEX") is a financial services company that operates a federally regulated derivatives exchange and prediction market on which users can buy and sell financial products known as "event contracts."  Event contracts allow users to take "yes" or "no" positions on the outcome of specified events, such as which candidate will win an election or whether the seasonally adjusted unemployment rate reported by the Bureau of Labor Statistics will exceed a certain percentage.  KalshiEX also offers event contracts based on sporting and other events.  Event contracts are a type of "swap" within the meaning of the Commodity Exchange Act of 1936, 7 U.S.C. § 1, *et seq.* ("CEA").  *See* 7 U.S.C. §§ 1a(47)(A)(ii) (defining "swap" to include "any agreement, contract, or transaction . . . that provides for any . . . payment[] or delivery . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence"); *KalshiEX, LLC v. Flaherty* (*Flaherty II*), 172 F.4th 220, 226 (3d Cir. Apr. 6, 2026) ("'[S]wap' includes event contracts.").

2.    KalshiEX's exchange operates as a designated contract market ("DCM") pursuant to an order of the Commodity Futures Trading Commission ("CFTC").[1]   Under the CEA, the CFTC has exclusive jurisdiction to regulate transactions, including swaps transactions, on DCMs. *See* 7 U.S.C. § 2(a)(1)(A); *see also Flaherty II*, 172 F.4th 220, 226 ("The [CEA] preempts state laws that directly interfere with swaps traded on DCMs.  Kalshi's [event contracts] are swaps traded on a CFTC-licensed DCM, so the CFTC has exclusive jurisdiction."); *Merrill Lynch,*

---

[1] *See* CFTC, *CFTC Designates KalshiEX as a Contract Market*, Release No. 8302-20 (Nov. 4, 2020), https://www.cftc.gov/PressRoom/PressReleases/8302-20; Order, *In re KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020), https://www.cftc.gov/filings/documents/2020/orgkexkalshidesignation201103.pdf.

*Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 386 (1982) (with the CEA, "the Commission was given exclusive jurisdiction over commodity futures trading").

3.      Kalshi Inc. is the parent holding company of KalshiEX.

4.      Kalshi Klear LLC ("Kalshi Klear") provides clearing services for event contracts traded on KalshiEX's DCM.  Since August 2024, Kalshi Klear has operated as a derivatives clearing organization ("DCO") pursuant to an Order of the CFTC pursuant to the CEA.[2]

5.      Kalshi Klear Inc. is the sole member of Kalshi Klear.

6.      Kalshi Trading participates on and provides liquidity at times for contracts traded on KalshiEX.  Like other market participants, Kalshi Trading is a member of KalshiEX's exchange and subject to KalshiEX's rules.

**B.      Summary of the Complaint**

7.      On June 17, 2026, the Commonwealth of Kentucky, through the Attorney General's Office ("Plaintiff"), filed a Complaint against the Kalshi Defendants in the Franklin Circuit Court of the Commonwealth of Kentucky.  A copy of that Complaint is attached hereto as Exhibit 3.

8.      Plaintiff purports to state claims against the Kalshi Defendants under the Kentucky Consumer Protection Act (KRS 367), the Kentucky Loss Recovery Act (KRS 372), and KRS 528.100—for offering for trading *federally regulated* event contracts subject to the CFTC's exclusive jurisdiction.

9.      Plaintiff claims that KalshiEX and Kalshi Inc. are engaged in illegal gambling in violation of KRS 528.100 and the Kentucky Consumer Protection Act, KRS 367.170.  Plaintiff alleges that by offering event contracts on KalshiEX's DCM without authorization under Kentucky

---

[2] *See* CFTC, *CFTC Grants Kalshi Klear LLC DCO Registration*, Release No. 8957-24 (Aug. 29, 2024) https://www.cftc.gov/PressRoom/PressReleases/8957-24, Order of Registration, *In re Kalshi Klear LLC For Registration as a Derivatives Clearing Organization* (Aug. 28, 2024).

law, KalshiEX and Kalshi Inc. are violating Kentucky's gambling and consumer protection statutes. Plaintiff further claims that all Kalshi Defendants are liable for conducting void transactions under Kentucky's Loss Recovery Act, KRS 372, and that KalshiEX and Kalshi Inc.'s marketing pursuant to such alleged illegal gambling additionally violates the Kentucky Consumer Protection Act, KRS 367.170.

10. As relief, Plaintiff seeks, among other things, (i) an order temporarily and permanently enjoining the Kalshi Defendants' operations in Kentucky; (ii) civil penalties for alleged violation of the Kentucky Consumer Protection Act pursuant to KRS 367.990; (iii) all recoverable measures of damages, including actual, punitive, and treble damages, in addition to attorneys' fees and prejudgment interest; (iv) restitution of alleged unjust gains; and (v) an order finding that the Kalshi Defendants have violated the Kentucky Consumer Protection Act, the Kentucky Loss Recovery Act, and KRS 528.100. Ex. 3 at 55-56.

11. The Kalshi Defendants have not yet been served with the Complaint. Accordingly, the Kalshi Defendants' time to respond to the Complaint by answer or motion has not expired, and defendants have not served or filed an answer or motion.

**C.   KalshiEX is Already Litigating Identical Issues in Federal Court**

12. This Action raises issues of federal law substantially similar to those KalshiEX has been litigating in federal courts across the country, including appeals on similar issues currently pending before the Fourth, Sixth, and Ninth Circuits. *KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir.); *KalshiEX LLC v. Orgel*, No. 26-5235 (6th Cir.); *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir.); *see also* Consent Motion to Consolidate Cases, *KalshiEx LLC v. Furcolo*, 1:26-cv-00327 (D.R.I. June 5, 2026), Dkt. No. 26 (noting that state authorities will not seek remand of state enforcement action brought against KalshiEX).

13. Significantly, the Third Circuit recently ruled in KalshiEX's favor, holding that the CEA "preempts state laws that directly interfere with swaps traded on DCMs," including KalshiEX's sports-event contracts. The Court explained that "Kalshi's sports-event contracts fit comfortably" within the CEA's definition of "swap" because "[t]he outcome of a sports event certainly can be associated with a potential financial, economic, or commercial consequence." *Flaherty II*, 172 F.4th 220, 227.

14. The CFTC and the U.S. Department of Justice ("DOJ") also recently filed suit in eight states to enjoin those states from enforcing state laws against DCMs on preemption grounds, filed a motion to intervene in Rhode Island in an action against the state, and submitted amicus briefs in multiple appellate courts making the same points. *See generally United States v. Arizona*, 2:26-cv-02246 (D. Ariz. Apr. 2, 2026), Dkt. No. 1 ("AZ Compl."); *United States v. Connecticut*, 3:26-cv-00498 (D. Conn. Apr. 2, 2026), Dkt. No. 1; *United States v. Illinois*, 1:26-cv-03659 (N.D. Ill. Apr. 2, 2026), Dkt. No. 1; *United States v. New York*, No. 1:26-cv-3404 (S.D.N.Y. Apr. 24, 2026), Dkt. No. 1; *United States v. Wisconsin*, No. 2:26-cv-749 (E.D. Wis. Apr. 28, 2026), Dkt. No. 1; *United States v. Minnesota*, 0:26-cv-2661 (D. Minn. May 19, 2026), Dkt. No. 1; *United States v. New Mexico*, 26-cv-1912 (D.N.M. June 12, 2026), Dkt. No. 1; *KalshiEx LLC v. Furcolo*, 1:26-cv-00327 (D.R.I. May 28, 2026), Dkt. No. 19 (CFTC and Department of Justice motion to intervene); *see also* Amicus Brief of Commodity Futures Trading Commission ("CFTC CA9 Amicus Br.") at 19, 21, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2 (confirming that the CEA's exclusive jurisdiction provision "preempts application of state gambling laws to event contracts trad[ed] on DCMs" and that sports event contracts fall "comfortably" within the CFTC's exclusive jurisdiction); Amicus Brief of Commodity Futures Trading Commission, *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir. May

12, 2026), Dkt. No. 31; Amicus Brief of Commodity Futures Trading Commission, *Commonwealth v. KalshiEX LLC*, No. SJC-13906 (Mass. Apr. 24, 2026), Dkt. No. 38. Last month, a federal court granted a preliminary injunction enjoining Arizona state regulators, at the request of the CFTC and DOJ, from proceeding with any criminal or civil actions to enforce their preempted state gaming laws against DCMs. *KalshiEX LLC v. Johnson*, 2:26-cv-01715, Dkt. 96 (D. Ariz. May 5, 2026).

15.     Plaintiff filed its Complaint against the Kalshi Defendants with no warning or dialogue. Plaintiff's rush to file this Action ignores that whether the CEA preempts state gambling regulations "raise[s] serious questions," *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282, at *12 (D. Nev. Nov. 24, 2025) appeal filed, 25-7516 (9th Cir. Nov. 28, 2025), which have divided the federal courts. *See Flaherty II*, 172 F.4th at 231 (affirming preliminary injunction in Kalshi's favor and holding state gambling laws preempted); *KalshiEX LLC v. Johnson*, 2026 WL 1223373, at *8 (D. Ariz. May 5, 2026) (enjoining state enforcement action against Kalshi because Kalshi and the CFTC "are likely to succeed on their claim that the CEA preempts [state]'s enforcement of its gambling laws against operators of DCMs that offer event contracts"); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313, at *6-8 (D.N.J. Apr. 28, 2025) (holding state law preempted and granting preliminary injunction in Kalshi's favor); *Blue Lake Rancheria v. Kalshi Inc.*, 2025 WL 3141202 at *7 (N.D. Cal. Nov. 10, 2025) (rejecting argument that Kalshi's event contracts are unlawful gambling); *KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026) (finding "that Kalshi is likely to succeed on the merits because sports event contracts are 'swaps' and conflict preemption applies."); *but see Hendrick*, 2025 WL 3286282, at *14 (dissolving preliminary injunction); *KalshiEX LLC v. Schuler*, 2026 WL 657004, at *10 (S.D. Ohio Mar. 9, 2026) (denying preliminary injunction).

6

## I.    REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1441

16.    Under 28 U.S.C. § 1441, any civil action filed in state court over which a federal court has original jurisdiction may be removed to the federal district court for the district in which the state court action is pending.  This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims require the adjudication of federal law issues that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005).

17.    ***Federal law is necessarily raised.***  Several of Plaintiff's claims necessarily raise federal law.  First, Plaintiff alleges claims under the Kentucky Consumer Protection Act for false, deceptive, misleading, and unfair practices. In connection with those claims, Plaintiff alleges that Kalshi has "repeatedly conveyed the false, deceptive, and misleading impression that the sports wagers that they offer through their prediction market are lawful . . . ." Ex. 3 at 34-35.  Plaintiff cannot prove that any of Kalshi's statements about the lawfulness of its event contracts are false, deceptive or misleading without this Court construing federal law—specifically, the Commodity Exchange Act and CFTC regulations thereunder.

18.    Plaintiff also alleges, in connection with its Consumer Protection Act claims, that Kalshi's "unauthorized offering and facilitation of sports gambling within Kentucky is not outweighed by countervailing benefits to consumers or competition." Ex. 3 at 36.  Plaintiff cannot prove that Kalshi's challenged conduct is "not outweighed by countervailing benefits to consumers" without this Court construing the Commodity Exchange Act, including the findings of Congress that transactions regulated under the CEA "are affected with a national public interest by providing a means for managing and assuming price risks, discovering prices, or disseminating

pricing information through trading in liquid, fair and financially secure trading facilities" and that to "serve these public interests," the markets should be "under the oversight of the Commission," which is charged with the responsibility of "deter[ring] and prevent[ing] price manipulation or any other disruptions to market integrity; [ ] ensur[ing] the financial integrity of all transactions subject to this chapter and the avoidance of systemic risk; protect[ing] all market participants from fraudulent or other abusive sales practices and misuses of customer assets; and [ ] promot[ing] responsible innovation and fair competition among boards of trade, other markets and market participants." *See* 7 U.S.C. § 5(b). This Court cannot make any conclusion about countervailing benefits to consumers, as required for purposes of a Consumer Protection Act claim, without considering this and other aspects of federal law regulating these markets in interstate commerce.

19.     Plaintiff also alleges a claim under Kentucky's Loss Recovery Act, KRS 372. Ex. 3 at 36-37.  Importantly, Kentucky's Loss Recovery Act notes, without reservation, that its terms and provisions "do not apply to betting, gaming, or wagering that has been authorized, permitted, or legalized." KRS 372.005.  Thus, in order to prove its claim, Plaintiff must show that KalshiEX's event contracts are not transactions that are otherwise permitted by law.  Plaintiff cannot do so without this Court having to construe federal law.

20.     For example, whether KalshiEX's event contracts are "authorized, permitted, or legalized" for the purposes of KRS 372.005 necessarily turns on, among other things, the question of whether they are (i) "swaps" within the meaning of the CEA (7 USC § 1a(47)(A) (defining "swap" to include any "agreement, contract, or transaction . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence"); *Flaherty*, 2026 WL 924004, at *2, *4 (finding event contracts are "swaps" under the CEA); (ii) transactions offered on a federally

8

regulated exchange that has been designated to offer swaps by the CFTC pursuant to federal law (*see* 7 U.S.C. § 7 (addressing "[d]esignation of boards of trade as contract markets"); *id.* § 2(a)(1)(A) (giving exclusive jurisdiction to the CFTC of *"*accounts, agreements . . . , and transactions involving swaps or contracts of sale of a commodity for future delivery (including significant price discovery contracts), traded or executed on a [DCM]"); and (iii) transactions for the purpose of addressing loss that is dependent on chance covered by the CEA (*id.* § 5(a) (finding that transactions subject to the CEA include those entered into "regularly in interstate [ ] commerce [that] are affected with a national public interest by providing a means for managing and assuming price risks").

21.     Moreover, to demonstrate that KalshiEX's event contracts are not "authorized, permitted, or legalized," Plaintiff must show that neither state nor federal law sanctions these contracts. Plaintiff cannot so prove without this Court considering the CEA's grant to the CFTC of "exclusive jurisdiction" over "transactions involving swaps or contracts of sale of a commodity for future delivery" on designated exchanges, which include event contracts (*see* 7 U.S.C. §§ 1a(19)(iv), 1a(47)(A)(ii), 2(a)(1)(A); *Flaherty*, 2026 WL 924004, at *2, *4), as well as grappling with the fact that the CFTC has permitted these event contracts to be listed on Kalshi's exchange as swaps that are not contrary to the public interest, *see* AZ Compl. ¶¶ 53-57, 62.

22.     ***Federal law is disputed.*** The federal legal issues in this action are substantially similar to those actively in dispute in federal courts across the country. *See supra* ¶¶ 12-15. Ultimately, whether trading event contracts on a federally regulated DCM is conduct subject to Kentucky gambling laws—or rather "authorized, permitted, or legalized" under federal law—is "the central point of dispute" in this Action. *Gunn*, 568 U.S. at 259.

9

23.    ***The federal question is substantial.***  The question raised under federal law is substantial, as Plaintiff's claims are an attack on derivatives offered on a federally regulated exchange, overseen by a federal agency with exclusive jurisdiction over these markets, which involve transactions in interstate commerce.  Plaintiff's right to recovery under the Consumer Protection Act and KRS 372 depends on whether Kalshi's event contracts are federally authorized and regulated swaps under the CEA, which would necessarily mean that any statements by Kalshi that its event contracts are lawful is not false, misleading, or deceptive and that trading event contracts cannot be "betting, gaming, or wagering" that would be regulated under state law.  *See, e.g.,* KRS § 367.170; KRS § 372.010; *see Gunn*, 568 U.S. at 261 (explaining that a question is substantial where, for example, it calls into question the validity of a federal statute).  Moreover, whether there are countervailing consumer benefits to the operation of markets in interstate commerce, under the guidance of a federal agency, is core to this matter and a quintessential federal question.  The CFTC has sued eight states for bringing suits substantially similar to the one asserted by Plaintiff here, alleging violations of the Supremacy Clause, and has submitted amicus briefs in several other pending lawsuits challenging states' assertions of jurisdiction over these federal markets.  *See* ¶ 14, *supra*. A federal district court in Arizona has enjoined that state's attorney general from pursuing its claims.  *Id.*  For Plaintiff to succeed on these claims, the Court must adopt a narrow interpretation of the CEA's grant of exclusive jurisdiction to the CFTC, in contravention of the CEA's plain text, case law interpreting it, and the CFTC's own position, as clearly expressed in numerous pending litigations.  *Gunn*, 568 U.S. at 261 (explaining that a question is substantial where, for example, it calls into question the validity of a federal statute).

24.    ***Capable of resolution without disrupting the federal-state balance.***  This Court is best positioned to resolve the issue of whether Kalshi's business is authorized by federal law and,

therefore, subject to exclusive federal regulation, or whether any Kentucky licensing or compliance is required.  *See Flaherty II*, 172 F.4th at 231 ("Congress gave the CFTC exclusive jurisdiction over trades on DCMs."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 355-56, 386 (1982) (the CFTC has "exclusive jurisdiction over commodity futures trading"); *In re Int. Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 445 (S.D.N.Y. 2017) (explaining that the CEA was amended in 2010 to "establish a comprehensive new regulatory framework for swaps" and the CFTC was "vested . . . with exclusive jurisdiction to implement that framework" (citation modified)).  Because the event contracts at issue are swaps and are subject to exclusive federal regulation, they cannot be regulated under state gambling laws.  *Flaherty II*, 172 F.4th 220, 225-230.  Such a resolution by this Court, therefore, will not disrupt the federal-state balance but will instead reinforce the harmonious application of federal and state laws, consistent with the Supremacy Clause.  U.S. Const. art. VI, cl. 2.

### III.    REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1442(a)(2)

25.    As to KalshiEX and Kalshi Klear, removal is proper pursuant to 28 U.S.C. § 1442(a)(2), which authorizes removal of a state action directed against "[a] property holder whose title is derived from any . . .  officer [of the United States or of any agency thereof], where such action . . . affects the validity of any law of the United States."  The federal officer removal statute is "not 'narrow' or 'limited.'"  *Bennet v. MIS Corp.*, 607 F.3d 1076, 1084-85 (6th Cir. 2010) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969); *see also Colorado v. Symes*, 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932) (holding that the federal officer removal statute should "be liberally construed to give full effect to [its] purpose[ ].").  This action is removable under this provision because KalshiEX's designation as a contract market and Kalshi Klear's designation as a DCO under the CEA constitute property derived from the CFTC, and Plaintiff's action directly affects that property right and the validity of the CEA.

11

26.    ***KalshiEX and Kalshi Klear are property holders with title derived from the CFTC***.  On November 3, 2020, the CFTC approved KalshiEX's designation as a contract market and Kalshi Klear's designation as a DCO pursuant to the CEA.  *See* CFTC Designation Order, KalshiEX LLC (Nov. 3, 2020), https://www.cftc.gov/sites/default/files/filings/documents/2020/orgkexkalshidesignation201103.pdf; *supra* ¶ 4, note 2.  Although property is not defined in the removal *statute*, property is generally understood to include "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised" and "every kind of valuable right and interest that can be made the subject of ownership."  *Property*, Black's Law Dictionary (12th ed. 2024).  A government license grants a property right if the license cannot be revoked before the end of its term without cause.  *See Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 411-12 (6th Cir. 2002) (plaintiff possessed a "protected property interest in its license" because there were "explicit substantive constraints on the discretion . . . to revoke or suspend [the] licenses"); *Moody v. Mich. Gaming Control Bd.*, 790 F.3d 669, 678 (6th Cir. 2015) ("property interests" in licenses exist where there is an established process for appealing suspensions of such licenses).

27.    KalshiEX's and Kalshi Klear's designations as a DCM and DCO, respectively, create a clearly defined property right: they enable those entities to provide services for the trading or processing of swaps.  7 U.S.C. § 7b-3(a)(1) ("No person may operate a facility for the trading or processing of swaps unless the facility is registered as a . . . [DCM] under this section."); *see also* 17 C.F.R. § 38.3 (setting forth requirements and procedures for registration as a DCM); AZ Compl. ¶ 32 ("The CEA requires that . . . commodity derivative transactions [ ] be conducted on exchanges designated by, or registered with, the CFTC.").

28.    KalshiEX's and Kalshi Klear's designations as a DCM and DCO are also capable of exclusive possession or control.  The rights granted by those designations are restricted to

KalshiEX and Kalshi Klear unless transferred by the holder. *See* 7 U.S.C. § 7b-3(a)(1); 17 C.F.R. § 38.3(d)(1) (providing for "transfer of [a DCM's] designation from its current legal entity to a new legal entity"); *United States v. O'Dell*, 247 F.3d 655, 683 (6th Cir. 2001) ("the right to alienate is an important element" in determining ownership of property) (quoting *Union Carbide v. Alexander*, 679 S.W.2d 938, 941 (Tenn. 1984)); *Citizens State Bank of Barstow, Tex v. Vidal*, 114 F.2d 380, 383 (10th Cir. 1940) (holding that essential ingredients of property are whether it was "subject to ownership," "subject to transfer," and whether there was "exclusive possession and enjoyment."); *Shackleford v. United States*, 262 F.3d 1028, 1032 (9th Cir. 2001) ("The right to transfer is one of the most essential sticks in the bundle of rights that are commonly characterized as property." (citation omitted)).

29.     Finally, KalshiEX's and Kalshi Klear's designations establish that they have a legitimate claim of exclusivity over those designations. *See* 17 C.F.R. §§ 38.3(d)(1), 39.3(a)(1); *see also* Title, Black's Law Dictionary (12th ed. 2024) (defining "title" as "the legal link between a person who owns property and the property itself").

30.     As registered entities, KalshiEX's designation as a DCM and Kalshi Klear's designation as a DCO also come with the procedural protections typical of property rights. *See* 7 U.S.C. § 1a(40) (defining registered entity). For example, the *designation* as a contract market cannot be suspended or revoked by the CFTC without cause and only after providing KalshiEX notice, a hearing, and an opportunity to appeal to federal court. 7 U.S.C. § 7b ("The failure of a registered entity to comply with any provision of this chapter . . . shall be cause [for suspension or revocation] . . . ." (emphasis added)); 7 U.S.C. § 8(b) (describing process required before suspending or revoking a designation as a contract market). Those requirements reinforce that KalshiEX has a property interest in its designation as a contract market. *See, e.g.*, *Med Corp., Inc.*,

13

296 F.3d at 411-12; *Moody*, 790 F.3d at 678; *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1311 (10th Cir. 2018) (holding property right existed where statutory factors limited discretion in making determinations); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (holding employee has property interest where statute and regulations place "substantive restrictions" on ability to change or terminate employment); *see also Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) ("A property interest may be created if 'procedural' requirements are intended to operate as a significant substantive restriction on the basis for an agency's actions.").

31.    ***Plaintiff's action affects the validity of the CEA***.  Section 1442 is intended to protect litigants "from state-court proceedings that may reflect local prejudice against unpopular federal laws or *federal* officials." *Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1192 (10th Cir. 2024) (emphasis added) (cleaned up); *Mays v. City of Flint, Mich.*, 871 F.3d 437, 443 (6th Cir. 2017) ("Concerns about local prejudice against unpopular laws or federal officials . . . underlie the federal-officer removal statute." (citation modified)); *LifePoint Corp. Servs. Gen. P'ship v. WellCare Health Ind. Co.*, 2023 WL 2388551, at *5 (E.D. Ky. Mar. 7, 2023) ("Congress generally intended the removal statute to protect out-of-state defendants from in-state bias."); *see Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).  Plaintiff's action is designed to override the clear language and comprehensive regulatory scheme found in the CEA, in favor of its preferred application of state gambling laws onto trading on federally regulated DCMs.  *See Carney v. Washington*, 551 F.Supp.3d 1042, 1054 (W.D. Wash. 2021) (permitting Section 1442(a)(2) removal where "Plaintiff's suit seeks to circumvent" a federal regulatory structure).

32.    Plaintiff's lawsuit, thus, frustrates the CEA's aims.  The CEA provides for exclusive federal *regulation* of transactions on DCMs and seeks to avoid a patchwork of state

14

regulation that conflicts with the CFTC's jurisdiction. *See* 7 U.S.C. § 2(a)(1)(A); *Flaherty II*, 172 F.4th 220, 230 ("Congress created the CFTC and amended the Act to do away with the patchwork of state regulations and bring futures trading on DCMs under the exclusive jurisdiction of the CFTC."); *see also* H.R. Rep. No. 93-975, at 79 (1974) ("This bill will put all exchanges . . . under the same set of rules[.]"); Consolidated Pls.' Mot. for Prelim. Inj. & TRO (CFTC TRO Br.) at 2, 9-10, *KalshiEX LLC v. Johnson*, No. 2:26-cv-01715-MTL, Dkt. No. 49 (D. Ariz. Apr. 8, 2026) (Arizona's enforcement actions "undermine the uniform application of federal law" and threaten to subject DCMs to "a patchwork of 50 state regulations"—which is "precisely what Congress sought to avoid with the CEA"); CFTC CA9 Amicus Br. at 2. The CFTC confirmed these points in its amicus brief in the Ninth Circuit, *id* at 2, and in eight litigations against States who have attempted to regulate event contacts traded on CFTC-regulated designated contract markets. *See* AZ Compl. ¶ 46 ("Congress recognized the need for uniform, nationwide regulation of futures and options markets because concurrent regulation by the states or other federal regulators such as the Securities and Exchange Commission could lead to 'total chaos.'"); *see also supra* ¶ 14.

33. As an initial matter, KalshiEX's event contracts easily "fit within the [CEA]'s definition of 'swaps' subject to the CFTC's jurisdiction." *Flaherty II,* 172 F.4th 220, 228; *see* CFTC CA9 Amicus Br. at 14-18 (explaining that event contracts are "swaps" under the "plain language" of the CEA). Because they are "swaps under the [CEA]," event contracts are "properly" regulated as "trading on a DCM (a form of futures trading) rather than as gambling (a broader and traditionally state-regulated field)." *Flaherty II*, 172 F.4th 220, 229. Given this precise delineation of federal and state spheres, the regulation of KalshiEX's event contracts under state gambling laws—as Kentucky seeks to do here—would create "a clash between a constitutional exercise of Congress's legislative power and conflicting state law." *Flaherty II*, 172 F.4th 220, 228 (citing

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 479 (2018)); *see also* AZ Compl. ¶ 6 ("Prompted by the evolution of national financial markets and repeated conflicts with state law, Congress enacted the CEA, granting the CFTC exclusive jurisdiction to regulate those markets and enacting a comprehensive federal regulatory framework that preempts state laws that attempt to regulate the operation of, or transactions on, CFTC-regulated exchanges."); *id.* ¶ 68 (state enforcement action directly "conflicts" with the "exclusive governance" over event contracts that Congress granted to the CFTC); U.S. Const. art. VI, cl. 2.; *see also Flaherty II*, 172 F.4th 220, 228-229 (CEA field preempts application of state law to KalshiEX).

34.    Indeed, allowing Kentucky to apply its gambling laws against the Kalshi Defendants would "subvert" the CEA, *see, e.g.*, AZ Compl. ¶ 12, and "directly conflict[] with the full purposes and objectives" of Congress. *Flaherty II*, 172 F.4th 220, 230; *see also* CFTC TRO Br. at 1. Enforcement of Kentucky's gambling laws "would create an obstacle to executing the [CEA] because such enforcement would prohibit Kalshi, which operates a licensed DCM under the exclusive jurisdiction of the CFTC, from offering its . . . event contracts" in Kentucky. *Flaherty II*, 172 F.4th 220, 230. This type of piecemeal "state regulation is exactly the patchwork that Congress replaced wholecloth by creating the CFTC." *Id.* Furthermore, compliance with state-specific prohibitions on event contracts would be "impossible" for DCMs, because these prohibitions conflict with the "federal mandate to provide impartial national access." AZ Compl. ¶ 72; *see also* CFTC CA9 Amicus Br. at 26-27.

35.    This Action would also fundamentally "subvert" the "exclusive jurisdiction" of the CFTC over DCMs. *See, e.g.*, AZ Compl. ¶ 12; *see also* CFTC TRO Br. at 6 ("This Court should enter a temporary restraining order and a preliminary injunction because Arizona gambling laws are preempted as applied to federally regulated DCMs listing swaps, and Arizona's aggressive

enforcement of its preempted state laws . . . causes irreparable harm to the federal plaintiffs."); CFTC CA9 Amicus Br. at 2 (state enforcement actions constitute "fundamental threat to Congress's statutory design"). For nearly a century, Congress has occupied the field as to "the regulation of trading on a DCM." *Flaherty II*, 172 F.4th 220, 229. That comprehensive regulatory scheme "has left no room" for supplementary state regulation, such as Kentucky seeks to do here. *Id.* at \*4 (citations omitted).

36. In sum, this action affects the validity of the CEA in several ways. This action would (i) create an obstacle to the accomplishment of Congress's objectives as set forth in the CEA; (ii) pose a "fundamental threat" to the CFTC's exclusive jurisdiction under the CEA; (iii) risk creating a patchwork of state regulation that the CEA is designed to avoid; and (iv) risk invalidating the definition of "swap" in the CEA. *See* AZ Compl. ¶ 63 (listing same reasons in explaining why Arizona's criminal prosecution would affect the validity of the CEA). These effects would "subvert federal law" and fundamentally affect the validity of the CEA. *Id.* ¶ 12; *see also Carney*, 551 F.Supp.3d at 1054 (finding state law claim tests validity of federal laws because it would "evade them or otherwise frustrate their aims").

## IV. REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1442(a)(1)

37. Removal is also proper as to all Defendants under 28 U.S.C. § 1442(a)(1) due to Plaintiff's artful pleading. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983). Joinder of the CFTC—a necessary party here—would create removal jurisdiction under 28 U.S.C. § 1442(a)(1). Plaintiff's strategic failure to join the CFTC in this action cannot allow it to defeat jurisdiction. *See Heavin v. Northstar Anesthesia of Kentucky II, PLLC*, 2019 WL 13297493, at \*2 (W.D. Ky. June 26, 2019) (holding that a plaintiff may not defeat removal by "artful pleading.").

17

38.     Kentucky law is clear that the CFTC should have been joined in this action.  KY RCP 19.01 provides that a person "shall be joined" if:

(1) in his absence complete relief cannot be accorded among those already parties; or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(a) as a practical matter impair or impede his ability to protect that interest; or

(b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest . . . .

39.     Each of those bases for joinder apply here.  *First*, joinder is required under KY RCP 19.01 because complete relief cannot be accorded among the parties without the CFTC's presence. KalshiEX, in particular, is subject to a federal mandate to provide "impartial national access" to its platform.  CFTC TRO Br. at 18.  In challenging state actions to regulate DCMs, the CFTC made clear that "state-imposed restrictions on access to markets" would "make it impossible for the regulated DCMs to comply with federal regulations."  *Id.*   Thus, relief cannot be adequately granted in the absence of the CFTC's participation concerning this issue.

40.     *Second*, joinder is also required under KY RCP 19.01(b).  As an initial matter, there can be no serious dispute that the CFTC "claims an interest relating to the subject" of this action. The CFTC has now brought three lawsuits against states seeking to apply their gaming laws to regulate event contracts offered on DCMs.  *See generally* CFTC Complaints.  The CFTC has also filed an amicus brief reinforcing that it has exclusive jurisdiction over DCMs.  The CFTC has made clear that it has "at least two legally protected 'sovereign injuries'" from states' attempts to apply gambling laws to CFTC-regulated derivatives markets: (1) the invasion of the CFTC's

exclusive jurisdiction over DCMs, and (2) the undermining of federal regulatory uniformity that Congress intended to achieve through the CEA.  CFTC TRO Br. at 6-7.

41.     The failure to join the CFTC would "[a]s a practical matter impair or impede" the CFTC's "ability to protect that interest."  *See* KY RCP 19.01(b)(i).  Kentucky is seeking to fundamentally alter the CFTC's exclusive jurisdiction over DCMs but has strategically chosen not to name the CFTC as a party.  Disposition of this action in the CFTC's absence also puts the Kalshi Defendants at a substantial risk of incurring inconsistent obligations by reason of the CFTC's interest.  *See* KY RCP 19.01(b)(ii); *see also* CFTC TRO Br. at 18 ("If a state bans the contract, the DCM cannot fulfill its federal mandate to provide impartial national access.  Other state-imposed restrictions on access to markets would similarly make it impossible for the regulated DCMs to comply with federal regulations.").

42.     Nevertheless, Plaintiff failed to name the CFTC as a party.  Had it done so, as required by KY RCP 19.01, that would have provided yet another basis for removal under 28 U.S.C. § 1442(a)(1).  Plaintiff "may not defeat removal" through artful pleading.  *Franchise Tax Bd.*, 463 U.S. at 22.

## V.     KALSHI MEETS THE PROCEDURAL REQUIREMENTS FOR REMOVAL

43.     Removal is timely.  Plaintiff filed the Complaint on June 17, 2026, and the Kalshi Defendants filed their Notice of Removal on June 19, 2026.  The Kalshi Defendants have not yet been served with the Complaint.  28 U.S.C. §§ 1446(b)(1) and (c)(1); *see Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

44.     Venue is proper pursuant to 28 U.S.C. §§ 111, 1441(a), 1442, and 1446(a) because the United States District Court for the Eastern District of Kentucky is the federal judicial district court embracing the Franklin Circuit Court of the Commonwealth of Kentucky, where the Complaint was filed.

45.    In accordance with 28 U.S.C. § 1446(d), written notice of this Notice of Removal will be promptly provided to Plaintiff and filed with the Franklin Circuit Court of the Commonwealth of Kentucky.  A copy of the Notice of Filing of Notice of Removal is attached hereto as Exhibit 4.

46.    No previous application has been made for the relief requested in this Notice of Removal.

**CONCLUSION**

WHEREFORE, the Kalshi Defendants respectfully request that the Action be removed from the Franklin Circuit Court of the Commonwealth of Kentucky to the United States District Court for the Eastern District of Kentucky and that this Court accept jurisdiction.  If any question arises as to the propriety of removal, the Kalshi Defendants respectfully request the opportunity to present oral argument.

Dated:    June 19, 2026

*/s/ Grahmn N. Morgan*
Grahmn N. Morgan (KBA No. 89219)
Mary K. Callesen (KBA No. 101993)
Erica A. Ashton (KBA No. 99489)
**DINSMORE & SHOHL LLP**
100 West Main Street, Suite 900
Lexington, KY 40507
Phone: 859.425.1044
Fax: 859.425.1099
Grahmn.morgan@dinsmore.com
Kassie.callesen@dinsmore.com
Erica.ashton@dinsmore.com

Neal K. Katyal (*pro hac vice* forthcoming)
Joshua B. Sterling (*pro hac vice* forthcoming)
Colleen R. Sinzdak (*pro hac vice* forthcoming)
William E. Havemann (*pro hac vice* forthcoming)
**MILBANK LLP**
1101 New York Avenue, NW
Washington, D.C. 20005

20

Telephone: 202.835.7500
Facsimile: 202.263.7586

Grant R. Mainland (*pro hac vice* forthcoming)
Katherine K. Fell (*pro hac vice* forthcoming)
Matthew Laroche (*pro hac vice* forthcoming)
Andrew L. Porter (*pro hac vice* forthcoming)
Nicole D. Valente (*pro hac vice* forthcoming)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001-2163
Telephone: 212.530.5000
Facsimile: 212.530.5219

*Attorneys for Defendants KalshiEX LLC, Kalshi Inc., Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC.*

21

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system and also caused a true and correct copy of the foregoing to be served via email and operation of regular U.S. Mail, postage pre-paid, on this 19th day of June, 2026, upon the following:

Daniel Keiser (KBA No. 100264)
Alex Scutchfield (KBA No. 87009)
Philip Heleringer (KBA No. 96748)
J. Christian Lewis (KBA No. 87109)
Justin Clark (KBA No. 89313)
**Office of the Attorney General**
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
daniel.keiser@ky.gov
alex.scutchfield@ky.gov
philip.heleringer@ky.gov
christian.lewis@ky.gov
justindclark@ky.gov

Adam J. Levitt (pro hac vice forthcoming)
Daniel R. Ferri (pro hac vice forthcoming)
Joseph Nelson, Jr. (pro hac vice forthcoming)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
jnelson@dicellolevitt.com
*Attorneys for Plaintiff the Commonwealth of Kentucky, ex. rel. Attorney General Russell Coleman*

Jordan L. Estes (pro hac vice forthcoming)
Yaira Dubin (pro hac vice forthcoming)
Judson O. Littleton (pro hac vice forthcoming)
Trevor Bondy Gopnik (pro hac vice forthcoming)
S. Stephanie Hahn
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.2400

22

jestes@gibsondunn.com (pro hac vice forthcoming)
ydubin@gibsondunn.com (pro hac vice forthcoming)
jlittleton@gibsondunn.com (pro hac vice forthcoming)
tgopnik@gibsondunn.com (pro hac vice forthcoming)
shahn@gibsondunn.com (pro hac vice forthcoming)
*Attorneys for Defendant Coinbase Financial Markets, Inc.*

Antony L. Ryan (pro hac vice forthcoming)
Kevin J. Orsini (pro hac vice forthcoming)
Brittany L. Sukiennik (pro hac vice forthcoming)
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West, 375 Ninth Avenue
New York, New York 10001
Telephone: 212.474.1000
aryan@cravath.com
korsini@cravath.com
bsukiennik@cravath.com
*Attorney for Defendants Robinhood Markets, Inc. and Robinhood Derivatives LLC*

I further certify that a true and correct copy of the foregoing is to be served via operation

of regular U.S. Mail, postage pre-paid, on this 19th day of June, 2026, upon the following:

ATTN: Legal Department
Webull Corporation
200 Carillon Parkway, St. Petersburg, Florida, 33716

*/s/ Grahmn N. Morgan*