**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, EX REL. ATTORNEY GENERAL, RUSSELL COLEMAN,<br><br>Plaintiff,<br><br>v.<br><br>KALSHIEX LLC et al.,<br><br>Defendants. | Case No. 3:26-cv-00048-REW<br><br>Judge: Hon. Robert E. Wier<br><br>Removed from the Franklin Circuit Court of the Commonwealth of Kentucky<br>Civil Case No. 26-CI-00689 |

# COMMONWEALTH OF KENTUCKY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND

Dated: July 20, 2026

# TABLE OF CONTENTS

Introduction .......... 1

Background .......... 2

I. Sports Wagering Regulation is Within the Commonwealth's Police Power. .......... 2

II. Kalshi Offers Unlicensed Sports Wagering in Kentucky Through the Trading of Sports-Related Event Contracts on its Prediction Market Platform. .......... 3

III. The Commonwealth Sued Kalshi and the other defendants for Violations of Kentucky Law.……………. .......... 4

IV. Federal Courts Have Consistently Rejected Kalshi's Efforts to Invoke Federal Jurisdiction. .......... 5

Legal standard .......... 6

Argument .......... 6

I. Removal is Improper Under 28 U.S.C. § 1441. .......... 8

A. Kalshi's Preemption Defense Does Not Create Federal Question Jurisdiction. .......... 9

B. Kentucky's Consumer Protection Act Claims Do Not Arise Under Federal Law. .......... 10

C. Kentucky's Loss Recovery Act Claim Does Not Arise Under Federal Law. .......... 11

II. Removal Is Improper Under 28 U.S.C. § 1442(a). .......... 13

A. Kalshi Can Neither Show that it is a Property Holder Nor that the Commonwealth's Action Affects the Validity of Any Law of the United States. .......... 13

B. The CFTC is Not a Necessary Party in this Lawsuit. .......... 16

III. The Court Should Award the Commonwealth its Costs and Attorney Fees .......... 19

Conclusion .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ah Sin v. Wittman*,
198 U.S. 500 (1905)....................2

*Benitez-Bithorn v. Rossello-Gonzalez*,
200 F. Supp. 2d 26 (D.P.R. 2002)....................14

*Berera v. Mesa Med. Grp., PLLC*,
779 F.3d 352 (6th Cir. 2015)....................17

*Brown v. Earthboard Sports USA, Inc.*,
481 F.3d 901 (6th Cir. 2007)....................9

*Cal. Dep't of Educ. v. S.F. Unified Sch. Dist.*,
No. C–98–1417 MMC, 1998 WL 241603 (N.D. Cal. May 7, 1998)....................16

*Carney v. Washington*,
551 F. Supp. 3d 1042 (W.D. Wash. 2021)....................15

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)....................6, 10, 12, 19

*City of Warren v. City of Detroit*,
495 F.3d 282 (6th Cir. 2007)....................7

*Commonwealth v. Crupper*,
33 Ky. 466 (Ky. 1835) (referencing the gambling act of 1833)....................2

*Eastman v. Marine Mech. Corp.*,
438 F.3d 544 (6th Cir. 2006)....................6

*Empire Healthchoice Assur., Inc. v. McVeigh*,
547 U.S. 677 (2006)....................8, 9

*Est. of Cornell v. Bayview Loan Servicing, LLC*,
908 F.3d 1008 (6th Cir. 2018)....................6

*Faulk v. Owens-Corning Fiberglass Corp.*,
48 F. Supp. 2d 653 (E.D. Tex. 1999)....................15

*Fifth Third Bank v. CSX Corp.*,
415 F.3d 741 (7th Cir. 2005)....................7

*Ford Motor Co. v. Mayes*,
575 S.W.2d 480 (Ky. Ct. App. 1978) ....................11

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*,
463 U.S. 1 (1983) ....................8, 11, 12

*Gore v. DeAngelis*,
No: 5:25-cv-01818, 2025 WL 3280346 (N.D. Ohio Nov. 25, 2025) ....................16

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) ....................8

*Gully v. First National Bank*,
299 U.S. 109 (1936) ....................6

*Gunn v. Minton*,
568 U.S. 251 (2013) ....................6

*Hayes v. Equitable Energy Res. Co.*,
266 F.3d 560 (6th Cir. 2001) ....................18

*Heavrin v. Northstar Anesthesia of Kentucky II, PLLC*,
No. 3:19-cv-00126-RGJ, 2019 WL 13297493 (W.D. Ky. June 26, 2019) ....................17

*Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*,
512 F. App'x 485 (6th Cir. 2013) ....................19

*Kentucky Gambling Recovery LLC v. Kalshi Inc.*,
No. 3:25-cv-00054-GFVT, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026) ....................1, 5, 12, 20

*Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*,
141 S.W.3d 378 (Ky. App. Ct. 2004) ....................19

*Martin v. Franklin Cap. Corp.*,
546 U.S. 132 (2005) ....................19

*Massachusetts v. KalshiEX LLC*,
No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) (Dkt. No. 34) ....................2, 5, 20

*Med Corp. v. City of Lima*,
296 F.3d 404 (6th Cir. 2002) ....................14

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986) ....................8

*Monroe v. Gagan*,
No. 2:08–CV–0018–PHX–RCB, 2008 WL 4418155 (D. Ariz. Sept. 29, 2008) ....................14

*Moody v. Michigan Gaming Control Board*,
790 F.3d 669 (6th Cir. 2015) ....................15

*Murphy v. National Collegiate Athletic Association*,
584 U.S. 453 (2018)....................2, 3

*Nessel v. KalshiEx, LLC*,
No. 1:26-cv-731 (W.D. Mich. June 25, 2026) (Dkt. No. 20) .................... *passim*

*Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX, LLC*,
No. 2:26-cv-00406-MMD-MDC, 2026 WL 579364 (D. Nev. Mar. 2, 2026) ....................2, 5, 20

*Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEx, LLC*,
No. 26-1304 (9th Cir. May 21, 2026) ....................5

*Ohio Gambling Recovery, LLC v. Kalshi Inc.*,
No. 4:25-CV-1573, 2026 WL 865788 (N.D. Ohio Mar. 30, 2026) ....................1, 5, 12, 20

*Powers v. Cottrell, Inc.*,
728 F.3d 509 (6th Cir. 2013) ....................19

*State of Tenn. ex rel. Slatery v. Tenn. Valley Auth.*,
311 F. Supp. 3d 896 (M.D. Tenn. 2018)....................16

*St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*,
809 F. Supp. 2d 524 (E.D. La. 2011)....................7, 13, 14

*Town of Davis v. W. Va. Power & Transmission Co.*,
647 F. Supp. 2d 622 (N.D.W. Va. 2007) ....................14

*Town of Stratford v. City of Bridgeport*,
434 F. Supp. 712 (D. Conn. 1977)....................14, 15

*United States v. Commonwealth of Kentucky*,
No. 3:26-cv-00049-SCM (E.D. Ky.) ....................18

*United States v. Washington*,
879 F.2d 1400 (6th Cir. 1989) ....................2

*Vanouwerkerk v. Owens-Corning Fiberglass Corp.*,
No. 1:99CV179 TH, 1999 WL 335960 (E.D. Tex. May 26, 1999)....................14

*Veneruso v. Mount Vernon Neighborhood Health Ctr*.,
933 F. Supp. 2d 613 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 604 (2d Cir. 2014) ....................15

*Veneruso v. Mount Vernon Neighborhood Health Ctr.*,
No. 13–1572–cv, 2014 WL 1776011 (2d Cir. May 6, 2014) ....................13, 15

*Washington v. KalshiEx, LLC*,
No. 26-3106 (9th Cir. May 21, 2026) ....................6

*Washington v. KalshiEX, LLC*,
No. C26-1062-JCC, 2026 WL 1217743 (W.D. Wash. May 5, 2026) .................... *passim*

*Watson v. Philip Morris Companies, Inc.*,
551 U.S. 142 (2007) ....................17

*Wolford v. Bayer Corp.*,
No. 7:16-227-KKC-HAI, 2017 WL 5665332 (E.D. Ky. Nov. 27, 2017) ....................17

**Statutes**

15 U.S.C. § 3001(a)(1) ....................2

28 U.S.C. § 1331 ....................6, 8, 9, 15

28 U.S.C. § 1441 ....................8, 13

28 U.S.C. § 1442 .................... *passim*

28 U.S.C. § 1447(c) ....................2, 5, 19, 20

KRS 367.100 *eq seq.* ....................4, 10, 11

KRS 230.260 ....................3

KRS 230.805(2) ....................3

KRS 230.811(1) ....................3

KRS 372.005 ....................4, 11, 12

KRS 372.010 ....................12

KRS 528.010 *et seq* ....................5

KRS 367.170 ....................11

Professional and Amateur Sports Protection Act ....................2

**Other Authorities**

U.S. Const. Amend. 10 ....................3

Kentucky Civil Rule 19.01 ....................18, 19

Federal Rule of Civil Procedure 19 ....................18

## INTRODUCTION

This action should be remanded to Franklin Circuit Court because this Court lacks subject matter jurisdiction. Plaintiff Commonwealth of Kentucky, *ex rel.* Attorney General, Russell Coleman (the "Commonwealth") asserts no claim arising under federal law and no state-law claim that necessarily depends on the resolution of a question of federal law. Rather, the Commonwealth is exercising its sovereign police power to hold Defendants KalshiEx LLC, Kalshi Inc., Kalshi Klear Inc., Kalshi Klear LLC, Kalshi Trading LLC (collectively, "Kalshi"), Robinhood Markets Inc., Robinhood Derivatives LLC, Webull Corporation, and Coinbase Financial Markets, Inc. accountable for violating Kentucky law and to enjoin them from facilitating unlicensed sports wagering in Kentucky in violation of those laws.

Kalshi removed this action less than 48 hours after the Commonwealth filed suit. This prompt removal was made possible by the fact that, in recent months, Kalshi has repeatedly attempted to invoke federal jurisdiction in response to the actions of other state attorneys general, state gambling regulators, and private plaintiffs; all of whom have recognized that Kalshi is offering sports wagering in blatant disregard of state gambling laws. Kalshi has argued elsewhere, as it does here, that removal is proper because the Commodity Exchange Act ("CEA") purportedly preempts state gambling laws, because its designation as a designated contract market by the Commodity Futures Trading Commission ("CFTC") renders it a federal property holder, and because the CFTC was purportedly a necessary party under the Kentucky Rules of Civil Procedure. District courts—including Judge Van Tatenhove within this District—have consistently rejected these arguments. *See Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-00054-GFVT, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026) (granting remand); *Nessel v. KalshiEx, LLC*, No. 1:26-cv-731 (W.D. Mich. June 25, 2026) (Dkt. No. 20) (same); *Ohio Gambling Recovery, LLC v. Kalshi*

*Inc.*, No. 4:25-CV-1573, 2026 WL 865788 (N.D. Ohio Mar. 30, 2026) (same); *Washington v. KalshiEX, LLC*, No. C26-1062-JCC, 2026 WL 1217743 (W.D. Wash. May 5, 2026) (same); *Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX, LLC*, No. 2:26-cv-00406-MMD-MDC, 2026 WL 579364 (D. Nev. Mar. 2, 2026) (same); *Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) (Dkt. No. 34) (same).

With courts in this Circuit and this District having repeatedly and recently rejected its arguments in support of removal, Kalshi should be ordered to pay the Commonwealth's attorney fees and costs pursuant to 28 U.S.C. § 1447(c).

## BACKGROUND

### I. SPORTS WAGERING REGULATION IS WITHIN THE COMMONWEALTH'S POLICE POWER.

The regulation of gambling enterprises has long been recognized as lying at the core of a state's police power. *See Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905); *United States v. Washington*, 879 F.2d 1400, 1401 (6th Cir. 1989) ("The enactment of gambling laws is clearly a proper exercise of the state's police power in an effort to promote the public welfare."). In the Interstate Horseracing Act, Congress itself recognized that "the States should have the primary responsibility for determining what form of gambling may legally take place within their borders." 15 U.S.C. § 3001(a)(1). Exercising this police power, Kentucky has regulated gambling for almost two centuries. *See Commonwealth v. Crupper*, 33 Ky. 466, 466 (Ky. 1835) (referencing the gambling act of 1833).

Recently, the Supreme Court reiterated the states' inherent authority to regulate gambling. In *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453, 474 (2018), the Supreme Court held that a federal statute—the Professional and Amateur Sports Protection Act—which prohibited states from authorizing sports gambling, violated the anticommandeering doctrine

under the Tenth Amendment. In doing so, the Supreme Court made clear that states had authority to regulate sports gambling: "The legalization of sports gambling requires an important policy choice, but the choice is not [the Judiciary's] to make. Congress can regulate sports gambling directly, but if it elects not to do so, each State is free to act on its own." *Id.* at 486.

In the wake of *Murphy*, Kentucky, like many other states, legalized online sports wagering. The Kentucky sports wagering industry, however, is a heavily regulated one. Under Kentucky law, no one can operate and offer sports wagering without a sports wagering operating license issued by the Kentucky Horse Racing and Gaming Corporation (KHRGC). KRS 230.260; KRS 230.805(2); KRS 230.811(1). When approving a service provider's licensing application, the KHRGC must consider several factors to determine whether "participation as a sports wagering service provider is in the best interests of sports wagering in Kentucky." 809 KAR 1:002, Section 3. The KHRGC also prohibits wagers for certain types of sporting events (e.g., amateur and other unsanctioned events) and incidents (e.g., injuries, penalties, and officiating decisions). 809 KAR 10:002, Section 3. These regulations are for the benefit of Kentuckians. Sports wagering "is particularly addictive and especially attractive to young people with a strong interest in sports, and in the past gamblers corrupted and seriously damaged the reputation of professional and amateur sports." *Murphy*, 584 U.S. at 460 (citations omitted).

## II. KALSHI OFFERS UNLICENSED SPORTS WAGERING IN KENTUCKY THROUGH THE TRADING OF SPORTS-RELATED EVENT CONTRACTS ON ITS PREDICTION MARKET PLATFORM.

Kalshi does not currently possess and has not applied for a license to participate in Kentucky's sports wagering framework. Dkt. No. 1-3, Compl., at ¶¶ 49–53. Yet, despite being unlicensed to offer sports wagering in Kentucky, Kalshi does exactly that. *Id.* at ¶ 53. Kalshi's online betting platform, which it refers to as a "prediction market," allows Kentucky consumers to place bets on a wide variety of events, including the outcomes of sporting events. *Id.* at ¶ 54. Kalshi

refers to the wagers placed on its platform as "event contracts," *id.*, but they are simply bets on whether an event will occur. *Id.* at ¶ 69. If the consumer bets correctly, they receive a payment; if not, they receive nothing. *Id.* at ¶¶ 69–70, 97. Kalshi earns transaction fees on bets placed on its platform. *Id.* at ¶¶ 55, 57.

The vast majority of events "invested" in on Kalshi are sporting events—ranging from the final result of the game to the final spread of points to the statistics of individual players during the game. *Id.* at ¶ 73. Kalshi's platform even offers parlays and prop bets. *Id.* at ¶ 80. The sports "event contracts" offered on Kalshi do not exist independent of the sports betting industry and relate to nothing except ways to gamble on sports. *Id.*

## III. THE COMMONWEALTH SUED KALSHI AND THE OTHER DEFENDANTS FOR VIOLATIONS OF KENTUCKY LAW

The Commonwealth filed this action on June 17, 2026, in Franklin Circuit Court. The Commonwealth's claims against Kalshi and the other Defendants arise under Kentucky statutes. *See* Compl. at ¶¶ 118–243. Specifically, the Commonwealth asserts the following claims:

(1) Kalshi and the other Defendants violated the Kentucky Consumer Protection Act (KCPA), KRS 367.100 *et seq*, by conveying the false impression that their unlicensed sports-wagering operations were lawful in Kentucky (Counts 1, 5, 9, and 13);

(2) Kalshi and the other Defendants further violated the KCPA by unfairly and unconscionably operating sports gambling enterprises in blatant disregard for Kentucky law (Counts 2, 6, 10, and 14);

(3) Under the Kentucky Loss Recovery Act, KRS 372.005 *et seq*., the sports bets that Kentuckians have placed on Kalshi's and the other Defendants' platforms are void and the Commonwealth is entitled to money lost gambling (Counts 3, 7, 11, and 15); and

(4) Kalshi and the other Defendants are operating illegal gambling devices in contravention of KRS 528.010 *et seq*. (Counts 4, 8, 12, and 16).

The Commonwealth does not allege a claim under federal law, nor does it allege any state-law claim that invokes federal law.

## IV. FEDERAL COURTS HAVE CONSISTENTLY REJECTED KALSHI'S EFFORTS TO INVOKE FEDERAL JURISDICTION.

In attempting to invoke federal jurisdiction elsewhere, Kalshi has primarily relied on two arguments. Kalshi has asserted federal question jurisdiction, as it does here; and courts have overwhelmingly rejected this argument. *See Washington*, 2026 WL 1217743, at *2 ("[B]ecause this is an attempt to enforce a gambling prohibition (and associated consumer protection law), removal pursuant to 28 U.S.C. § 1442 is inappropriate."); *Kentucky*, 2026 WL 596107, at *4; *Nessel*, No. 1:26-cv-731 (Dkt. No. 20, at 4–10); *Ohio*, 2026 WL 865788, at *3–4; *Nevada*, 2026 WL 579364, at *2–5; *Massachusetts*, No. 1:25-cv-12595 (Dkt. No. 34).

Kalshi has also begun to argue, as it does here, that the CFTC is a "necessary party" and that the federal officer removal statute thus applies. This argument has also been flatly rejected by multiple district courts. *See Washington*, 2026 WL 1217743, at *2; *Nevada*, 2026 WL 579364, at *5–6. Addressing the weakness of Kalshi's argument, Judge Maloney of the Western District of Michigan recently observed that Kalshi failed to cite any authority in support of its argument that it could remove the case based on the federal officer removal statute. *Nessel*, No. 1:26-cv-731 (Dkt. No. 20 at 11). Given its obvious lack of merit, Kalshi appears to pursue this strategy in the hopes that it creates an otherwise unavailable avenue for appellate review, *see* 28 U.S.C. § 1447(d), thereby prolonging its ability to operate without a sports wagering license. This is the course it unsuccessfully took in the Nevada and Washington cases. *Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEx, LLC*, No. 26-1304 (9th Cir. May 21, 2026) (Dkt. No. 20, at 1–3) (denying Kalshi's

motion to stay pending appeal because it did not make a strong showing that it is likely to succeed on the merits of its argument that the court has federal question jurisdiction or that Nevada was required to join the CFTC as a necessary party); *Washington v. KalshiEx, LLC*, No. 26-3106 (9th Cir. May 21, 2026) (Dkt. No. 19 1-3) (same).

## **LEGAL STANDARD**

The removing party bears the burden of establishing entitlement to removal jurisdiction. *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Id.* at 549–50 (quoting *Brown v. Francis*, 75 F.3d 860, 864–65 (3d Cir. 1996)). Whether a district court has federal-question jurisdiction is determined under the "well-pleaded complaint rule" in which only "the face of the plaintiff's properly pleaded complaint" is considered. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

## **ARGUMENT**

Kalshi primarily raises three arguments for removal; none has merit.

*First*, Kalshi argues that there is federal-question jurisdiction under 28 U.S.C. § 1331. "This pathway is a slim category that is to be read narrowly." *Est. of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1014 (6th Cir. 2018) (cleaned up). A state-law cause of action invokes federal-question jurisdiction only if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). But the complaint does not include a single reference to federal law; the only federal question here is Kalshi's preemption

defense. Binding precedent establishes that a federal defense does not create federal-question jurisdiction. *See City of Warren v. City of Detroit*, 495 F.3d 282, 286 (6th Cir. 2007) (quoting *Caterpillar*, 482 U.S. at 392).

*Second*, Kalshi seeks removal under the federal officer removal statute, contending that it is a federal property holder under 28 U.S.C. § 1442(a)(2). This argument equally lacks merit. To remove under this provision, Kalshi must show: (1) it is a "property holder whose title is derived from [a United States] officer" and (2) that the Commonwealth's action "affects the validity of any law of the United States." 28 U.S.C. § 1442(a)(2). Contrary to Kalshi's assertion, use of the term "title" in § 1442(a)(2), "implies that the statute applies only to real property and not a contractual 'property right'" *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 534–35 (E.D. La. 2011). And even if Kalshi were a "property holder" under Section 1442(a)(2), this lawsuit does not "affect the validity of any law of the United States" because the Commonwealth is not challenging the CEA or the CFTC's regulations; it is simply exercising its sovereign police power to enforce Kentucky's gambling laws against Kalshi's unlawful sports-wagering operations.

*Third*, Kalshi argues that the CFTC is an essential defendant under the Kentucky Rules of Civil Procedure, and if the CFTC had been joined in this lawsuit, Kalshi would be able to remove the case under the federal officer removal statute. This argument fails because the Federal Rules of Civil Procedure—not state procedural rules—governs actions in federal courts. And, further, even if state procedural rules did govern, the CFTC does not belong in this case. Again, the Commonwealth is not seeking to enforce its gambling laws against the CFTC; it is seeking to enforce them against Kalshi. There is no basis for this Court to exercise jurisdiction over this case.

## I. REMOVAL IS IMPROPER UNDER 28 U.S.C. § 1441.

A defendant may remove an action filed in state court if a federal district court has "original jurisdiction" over the action. 28 U.S.C. § 1441. Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The vast majority of cases" falling within the scope of Section 1331 original jurisdiction "are those in which federal law creates the cause of action." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Here, the Commonwealth has not asserted any federal causes of action. It has only asserted causes of action arising under Kentucky law. *See* Compl., at ¶¶ 118–243. This civil action, therefore, plainly does not fall within the ordinary exercise of a federal district court's original jurisdiction.

Federal courts may also have Section 1331 original jurisdiction over actions asserting only a state law claim if the claim "necessarily raise[s] a stated federal issue." *Grable*, 545 U.S. at 314. But this is a "special and small category" of cases, *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), and its application is severely constrained by the "well-pleaded complaint" rule, *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 9–10 (1983).

Under the "well pleaded complaint" rule, a federal district court's original jurisdiction (i.e. whether a cases arises under federal law) "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Id.*at 10 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)). Thus, even when it is "very likely, in the course of the litigation, a question under the Constitution would arise, [this] does not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." *Id.* (quoting *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908)). Rather, "[a] right or immunity

created by the Constitution or laws of the United Sates must be an element, and an essential one, of the plaintiff's cause of action." *Id. 10*– 11 (quoting *Gully v. First National Bank,* 299 U.S. 109, 112 (1936)). The Commonwealth's state law claims do not invoke federal law, and the Commonwealth can succeed on all of its claims without invoking federal law. If, suddenly, the Commodity Exchange Act ("CEA") or Commodity Futures Trading Commission ("CFTC") were to cease to exist, the Commonwealth's claims would remain viable and unaltered. Federal law is not a necessary element of the Commonwealth's claims; and, thus, the Commonwealth's claims do not fall into the "special and small" category of cases where a court has original jurisdiction over state law claims. *Empire Healthchoice Assur., Inc.*, 547 U.S. at 699. The Commonwealth's claims arise under the laws of Kentucky; they do not "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### A. Kalshi's Preemption Defense Does Not Create Federal Question Jurisdiction.

Kalshi argues that the Commonwealth's claims necessarily implicate the federal issue "whether trading event contracts on a federally regulated DCM is conduct subject to Kentucky gambling laws—or rather 'authorized, permitted, or legalized' under federal law." Notice of Removal, at ¶ 22.[1] In other words, Kalshi argues that the Commonwealth's claims are preempted. This is not the standard for invoking federal jurisdiction.

"[F]ederal preemption is an affirmative defense upon which the defendants bear the burden of proof." *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 912 (6th Cir. 2007) (quoting *Fifth Third Bank v. CSX Corp.,* 415 F.3d 741, 745 (7th Cir. 2005)). It is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption,

[1] *See also* Notice of Removal, at ¶ 24 ("This Court is best positioned to resolve the issue of whether Kalshi's business is authorized by federal law and, therefore, subject to exclusive federal regulation . . . .").

even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393. Thus, even though Kalshi will argue that the CEA preempts the state's claims, this potential argument cannot form the basis for this court's original jurisdiction. Kalshi's preemption defense does not make the Commonwealth's claims "arise under" federal law.

### B. Kentucky's Consumer Protection Act Claims Do Not Arise Under Federal Law.

Kalshi argues that the Commonwealth's claim under the Consumer Protection Act for false, deceptive and misleading practices necessarily turns on federal law because the Commonwealth alleges that Kalshi has "repeatedly conveyed the false, deceptive, and misleading impression that the sports wagers that they offer through their prediction market are lawful . . . ." Notice of Removal, at ¶ 17 (quoting Compl. ¶¶ 121–22). Kalshi's use of ellipses is misleading. The relevant allegations of the Complaint state, in full, that Kalshi has "repeatedly conveyed the false, deceptive, and misleading impression that the sports wagers that they offer through their prediction market are lawful, and not void, ***in Kentucky***." (Compl. ¶¶ 121–22. (emphasis added)). The Commonwealth has not alleged, and is not alleging, that Kalshi's conduct is contrary to federal law. Thus, whether Kalshi's conduct is "lawful" under federal law is not a disputed issue necessarily raised in the Complaint.

Kalshi may argue that its actions are lawful in Kentucky if Kentucky law is preempted by the CEA. But then the federal issue is whether the CEA preempts the Commonwealth's claim, which, as discussed above, is a defense that cannot justify removal. Kalshi is merely recasting its first argument. *See Caterpillar*, 482 U.S. at 393 (It is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption.").

Kalshi further argues that the Commonwealth's Consumer Protection Act claim for unfair

acts and practices necessarily raises a federal issue because the Commonwealth alleges that Kalshi's challenged conduct is "not outweighed by countervailing benefits to consumers." Notice of Removal, at ¶ 18 (quoting Compl. ¶ 131). This allegation in the Commonwealth's Complaint also does not reference or invoke federal law. A court can decide whether Kalshi's challenged conduct is or is not outweighed by countervailing benefits to consumers without any reference to federal law.

Kalshi is free to argue, in state court, that the CEA recognizes some consumer benefits from Defendants' actions, or that the CEA recognizes some benefit in leaving regulation of Kalshi to its exclusive authority. But these would be defenses—and, thus, these issues are not necessarily raised in the complaint and cannot be a basis for removal. *See Franchise Tax Bd. of State of Cal.*, 463 U.S. at 10 (a federal district court's original jurisdiction "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.").

Further, Kalshi cites no law to suggest the Commonwealth must prove the challenged conduct is not outweighed by countervailing benefits to consumers to succeed on its Consumer Protection Act claim. And, indeed, this is not a necessary element of unfairness under Kentucky law. *See* KRS 367.170 ("unfair shall be construed to mean unconscionable"); *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 485 (Ky. Ct. App. 1978) (analyzing unfairness claim without reference to whether challenged conduct is outweighed by countervailing benefits to consumers). For this reason, too, Kalshi has failed to show that the Commonwealth's Consumer Protection Act claim necessarily turns on a federal issue.

### C. Kentucky's Loss Recovery Act Claim Does Not Arise Under Federal Law.

The Commonwealth asserts claims under Kentucky's Loss Recovery Act ("LRA"), which

renders gambling transactions void. KRS 372.010. The LRA includes an exemption for "betting, gaming, or wagering that has been authorized, permitted, or legalized." KRS 372.005. Kalshi argues that this exemption provision raises a federal question of whether Kalshi's conduct is permitted by federal law.

Judge Van Tatenhove recently rejected this very same argument in remanding a private party's LRA claim against Kalshi to state court. *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-CV-00054-GFVT, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026). Judge Van Tatenhove correctly recognized that statutory exemptions, including KRS 372.005, "constitute affirmative defense[s] that are entirely the responsibility of the party raising them." *Id.* at *5 (quoting *Cunningham v. Cornell University*, 604 U.S. 693, 701 (2025)).[2] Thus, Kalshi's possible (or likely) reliance on KRS 372.005's exemption provision as a defense is not a sufficient basis for removal jurisdiction. *See Franchise Tax Bd. of State of Cal.*, 463 U.S. at 8.

At bottom, the disputed issue is whether, if Kalshi's conduct is authorized by federal law, that federal authorization preempts Kentucky state law. This, again, is just a rephrasing of Kalshi's preemption defense, which cannot provide a basis for removal. *See Caterpillar*, 482 U.S. at 393 (It is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption.").

In sum, Kalshi has failed to meet its burden in showing that the State's claims necessarily

---

[2] Judge Pearson, of the United States District Court for the Northern District of Ohio, likewise rejected essentially the same argument, made by Kalshi, in remanding to state court a private plaintiff's action asserting a claim under Ohio's equivalent to Kentucky's Loss Recovery Act. *Ohio Gambling Recovery, LLC v. Kalshi Inc.*, No. 4:25-CV-1573, 2026 WL 865788, at *4 (N.D. Ohio Mar. 30, 2026) ("Based on these allegations, the Complaint sufficiently pleads that Defendants engaged in unlawful gambling under Ohio law. The burden shifts to Defendants to demonstrate that such transactions are indeed permitted by Ohio law. That Defendants anticipate that such defenses are based in federal law does not equate to the Complaint raising a federal question.").

turn on the resolution of a federal issue, such that the Commonwealth's claims "arise under" the laws of the United States and this Court has original jurisdiction. Removal was improper under 28 U.S.C. § 1441.

## II. REMOVAL IS IMPROPER UNDER 28 U.S.C. § 1442(A).

Kalshi also asserts that removal is appropriate under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), (2). Another court within this Circuit described this same argument as "quite weak." *Nessel*, No. 1:26-cv-00731-PLM-JG (Dkt. No. 20 at 13).

### A. Kalshi Can Neither Show that it is a Property Holder Nor that the Commonwealth's Action Affects the Validity of Any Law of the United States.

Kalshi argues that removal is proper under 28 U.S.C. § 1442(a)(2) because it is a federal property holder. Notice of Removal, at ¶¶ 25–27. Section 1442(a)(2) is a "seldom-invoked federal-title-dispute removal provision." *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, No. 13–1572–cv, 2014 WL 1776011, at *4 (2d Cir. May 6, 2014). To remove under this provision, Kalshi must show: (1) it is a "property holder whose title is derived from [a United States] officer" and (2) that the Commonwealth's action "affects the validity of any law of the United States." 28 U.S.C. § 1442(a)(2). Kalshi fails to satisfy either of the two independently required prongs.

Kalshi maintains that it meets the first prong of Section 1442(a)(2) because its designation as a derivatives clearing organization under the CEA "constitute property derived from the CFTC." Notice of Removal, at ¶ 25. But Section 1442(a)(2) doesn't apply to this kind of intangible property, contrary to what Kalshi asserts. In *St. Bernard Port, Harbor & Terminal District*, for instance, the court rejected a similar argument. 809 F. Supp. 2d at 535. There, the defendant sought removal on the basis that it had a "property right" in its contract with a United States agency. *Id.* at 526, 534. The court rejected this argument, ruling that it was "foreclosed by the plain language

of the statute." *Id.* at 534–35. Use of the term "title" in § 1442(a)(2), the court concluded, "implies that the statute applies only to real property and not a contractual 'property right'" *Id.* at 535.

This limitation comports with the statutory history of § 1442(a)(2). Congress initially passed the statute in 1833, and it supplied removal jurisdiction only to revenue officers and their successors. *See Vanouwerkerk v. Owens-Corning Fiberglass Corp.*, No. 1:99CV179 TH, 1999 WL 335960, at *13 (E.D. Tex. May 26, 1999). Congress later amended the statute to provide removal jurisdiction to revenue officers or "any person holding property or estate by title derived from [revenue] officer[s], concerning such property or estate . . . ." *Town of Stratford v. City of Bridgeport*, 434 F. Supp. 712, 714 (D. Conn. 1977). The purpose of the predecessors of § 1442(a)(2) "was to [e]nsure a federal forum to persons who took title to property from a revenue officer and faced a challenge to their title from others, such as taxpayers, who claimed that the law under which the revenue officer had seized their property was invalid." *Id.* Such disputes naturally involved real property, which explains why cases finding the "property" prong to be satisfied involve land disputes. *See, e.g.*, *Town of Davis v. W. Va. Power & Transmission Co.*, 647 F. Supp. 2d 622, 624 (N.D.W. Va. 2007); *Benitez-Bithorn v. Rossello-Gonzalez*, 200 F. Supp. 2d 26, 28–29, 31 (D.P.R. 2002); *Monroe v. Gagan*, No. 2:08–CV–0018–PHX–RCB, 2008 WL 4418155, at *1, *4 (D. Ariz. Sept. 29, 2008).

To this end, Kalshi's Section 1442(a) argument was recently rejected by the Western District of Washington. *Washington*, 2026 WL 1217743, at *2. There, the court recognized, like other courts who have analyzed this issue, that the term "property" in § 1442(a)(2) refers to real—not intangible—property. *Id.*

The cases that Kalshi cites in its notice of removal do not support its position that it is entitled to removal under Section 1442(a)(2). *Med Corp. v. City of Lima*, 296 F.3d 404, 411–12

(6th Cir. 2002) and *Moody v. Michigan Gaming Control Board*, 790 F.3d 669, 678 (6th Cir. 2015), stand for the general proposition that licenses establish a "property interest," but these cases do not involve removal under § 1442(a)(2). Simply put, Kalshi fails to cite a case where a court approved removal under Section 1442(a)(1) in a case involving merely intangible property.

Further, even if Kalshi's "designation" as a contract market and clearing organization qualifies as "property" under Section 1442(a)(2), this case should still be remanded because it falls outside the second prong of the statute: the Commonwealth's action does not "affect[] the validity of any law of the United States." This prong requires "something more than a dispute over the meaning of a federal law." *Carney v. Washington*, 551 F. Supp. 3d 1042, 1053 (W.D. Wash. 2021). Indeed, some courts have required a "claim that a federal law is *invalid*." See *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 632 (S.D.N.Y. 2013) (emphasis in original), *aff'd*, 586 F. App'x 604 (2d Cir. 2014).

Kalshi contends Section 1442(a)(2) applies because the Commonwealth's action is "designed to override the clear language and comprehensive regulatory scheme found in the CEA." Notice of Removal, at ¶ 31. But that reading is inconsistent with the removal statute's text, which hinges on the word "*validity*." Rather than identify any challenge to the validity of federal law, Kalshi simply repackages its preemption defense as a basis for removal under § 1442(a)(2). *See id.* at ¶¶ 31–36. Kalshi's preemption defense "do[es] not supply removal jurisdiction under § 1442(a)(2), just as [it] would not supply federal question jurisdiction under § 1331." *Town of Stratford*, 434 F. Supp. at 715. *See Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 669 (E.D. Tex. 1999) (holding that Section 1442(a)(2) does not cover "federal law matters [defendant] wish to raise as a defense"); *Veneruso*, 586 F. App'x at 608 (holding that the plaintiff's action "does not challenge the validity of any federal law" where the plaintiff "merely contends

that the various federal statutes and regulations [the defendant] has identified do not provide a defense to the [plaintiff's] claims that [the defendant] violated New York law"); *Cal. Dep't of Educ. v. S.F. Unified Sch. Dist.*, No. C–98–1417 MMC, 1998 WL 241603, at *5 (N.D. Cal. May 7, 1998) (finding that the second prong of Section 1442(a)(2) was not met when plaintiff's "claims do not purport to affect the validity of any federal law" and defendant wished to raise federal defenses). The Commonwealth is not seeking to interfere with the CEA or the CFTC's regulations whatsoever; it is seeking to enforce its police power against Kalshi for facilitating unlicensed sports wagering in Kentucky.

**B. The CFTC is Not a Necessary Party in this Lawsuit.**

In a last-ditch effort to avoid state court, Kalshi argues that the Commonwealth should have named the CFTC as a party, and if the Commonwealth had done so, this Court would have jurisdiction under the federal officer removal statute. Notice of Removal, at ¶ 37. Specifically, Kalshi contends that under the Kentucky Rules of Civil Procedure, the Commonwealth was required to join the CFTC in the lawsuit because "complete relief cannot be accorded among the parties without the CFTC's presence." *Id.* at ¶ 39. By failing to join the CFTC, Kalshi's argument goes, the Commonwealth engaged in "artful pleading" to side-step the federal officer removal statute. *Id.* at ¶ 42.

Under 28 U.S.C. § 1442(a)(1), cases may be removed to federal court if they are "against or directed to" the United States "or any agency thereof or any officer . . . of the United States or of any agency thereof . . . for or relating to any act under color of such office." The case may be removed "by them," meaning the agency or officer. *Id.*; *see State of Tenn. ex rel. Slatery v. Tenn. Valley Auth.*, 311 F. Supp. 3d 896, 902 n.8 (M.D. Tenn. 2018); *Gore v. DeAngelis*, No: 5:25-cv-01818, 2025 WL 3280346, at *1 (N.D. Ohio Nov. 25, 2025). The statute's purpose is to "protect the Federal Government from the interference with its operations that would ensue were a State

able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150 (2007) (cleaned up).

Kalshi's argument under Section 1442(a)(1) fails for several reasons.

First, Kalshi's argument that the Commonwealth engaged in "artful pleading" by failing to name the CFTC as a defendant misconstrues the artful pleading doctrine. Although the doctrine is an exception to the well-pleaded complaint rule, it applies only when a plaintiff disguises what is, in substance, a federal *cause of action*—not when it declines to name a necessary *party*. *See Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 358 (6th Cir. 2015) (explaining artful pleading doctrine). "For the artful pleading exception to apply, the plaintiff must have drafted her complaint carefully 'so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute.'" *Heavrin v. Northstar Anesthesia of Kentucky II, PLLC*, No. 3:19-cv-00126-RGJ, 2019 WL 13297493, at *2 (W.D. Ky. June 26, 2019) (quoting *Lee v. Kirkpatrick*, No. 1:16-CV-00123-GNS, 2016 WL 7197478, at *5 (W.D. Ky. Dec. 9, 2016)). No such circumstance exists here. The Commonwealth is simply enforcing Kentucky's sports-wagering laws against Kalshi. *See Wolford v. Bayer Corp.*, No. 7:16-227-KKC-HAI, 2017 WL 5665332, at *2 (E.D. Ky. Nov. 27, 2017) ("By its very nature, the artful pleading doctrine requires there first to be a federal cause of action that the plaintiff is trying to avoid—one that might have been invoked absent artful pleading.").

Second, Kalshi's argument that the CFTC is a necessary party under state court rules of procedure—and that, if joined, the action would become removable under Section 1442(a)(1) because it would then be against a federal agency—has been rejected by multiple district courts because Kalshi "cites no authority suggesting that a state court rule could ever allow it to invoke a

removal statute usable only by federal agencies and officers." *Nessel*, No. 1:26-cv-00731-PLM-JG, (Dkt. No. 20 at 11); *Washington*, 2026 WL 1217743, at *2 ("Defendant fails to provide the Court with authority for the proposition that a failure to join a necessary Rule 19 party, in and of itself, triggers § 1442(a)(1) removal authority if that party is the United States or its agency. … Nor is the Court aware of such authority."). Indeed, the Federal Rules of Civil Procedure—not state procedural rules—govern actions in federal court. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) ("The Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts, regardless of whether jurisdiction is based on federal question or diversity of citizenship."); *Nessel*, No. 1:26-cv-00731-PLM-JG (Dkt. No. 20 at 11) (recognizing that the Federal Rules of Civil Procedure governs civil actions in federal courts).

Finally, even if § 1442(a)(1) somehow could be triggered by the failure to add a necessary party under state court rules of civil procedure, the CFTC is not a necessary party under the Kentucky Rules of Civil Procedure. Kentucky Civil Rule 19.01 provides that a person "shall be joined as a party" if: (1) "complete relief cannot be accorded" in his absence; or (2) "he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence" may "impair or impede his ability to protect that interest" or "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

Kalshi contends that the CFTC is a necessary party because the Commonwealth's lawsuit "is seeking to fundamentally alter the CFTC's exclusive jurisdiction" over contract markets. Notice of Removal, at ¶ 41. This argument is incorrect.[3] Under Kentucky Civil Rule 19.01 a necessary

[3] The CFTC has made clear, that in its own view, it need not be a part of *this* case: It has filed a *separate* lawsuit asserting nearly identical preemption arguments in an attempt to stop the Commonwealth's enforcement efforts against Kalshi and other prediction markets. *See United States v. Commonwealth of Kentucky*, No. 3:26-cv-00049-SCM (E.D. Ky.). Presumably, the CFTC would have instead sought to intervene in this action if it considered its presence

party is "one whose absence prevents the Court from granting complete relief among those already parties." *Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378, 387 (Ky. Ct. App. Ct. 2004) (quoting *Milligan v. Schenley Distillers, Inc.*, 584 S.W.2d 751, 753 (Ky. App. Ct. 1979)). Put differently, a necessary party is "one whose interest would be divested by an adverse judgment." *Id.* (citing *West v. Goldstein*, 830 S.W.2d 379 (Ky. 1992)). Here, the CFTC has no legal interest in this case. The Commonwealth is enforcing Kentucky's sports-wagering laws against Kalshi—not the CFTC—and the relief sought runs only against Kalshi. The Commonwealth is not trying to enforce Kentucky's gambling laws against the CFTC. Simply put, the CFTC has no interest in this case under Rule 19.01. *See Nessel*, No. 1:26-cv-00731-PLM-JG (Dkt. No. 20 at 11) ("Whatever interests the CFTC might have in the outcome of the case, they are insufficient to prevent courts from granting complete relief on Plaintiff's claims against Defendant. The CFTC would not be required to do anything and faces no legal exposure.").

## III. THE COURT SHOULD AWARD THE COMMONWEALTH ITS COSTS AND ATTORNEY FEES

In remanding this case, the Court should additionally "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Fees should be awarded where, as in this case, "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). There is "no objectively reasonable basis for removal" where an "abundance" of "clear case law" obviates a defendant's grounds for removal. *Powers v. Cottrell, Inc.*, 728 F.3d 509, 520 (6th Cir. 2013); *see also Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013) (objective reasonableness may depend on clarity of law at time of removal notice).

Kalshi's arguments are objectively unreasonable. It "is now settled law that a case may *not* be removed to federal court on the basis of a federal defense," *Caterpillar*, 482 U.S. at

393, yet Kalshi relies entirely on a purported federal preemption defense to justify removal under Sections 1331 and 1442.

Further, courts across the country, including a court in this district and other courts within the Sixth Circuit, have consistently rejected Kalshi's efforts to invoke federal court jurisdiction. *See Kentucky Gambling Recovery*, 2026 WL 596107 (granting remand); *Nessel*, No. 1:26-cv-731 (Dkt. No. 20) (same); *Ohio Gambling Recovery*, 2026 WL 865788 (same); *Washington*, 2026 WL 1217743 (same); *Nevada ex rel. Nevada Gaming Control Bd.*, 2026 WL 579364 (same); *Massachusetts*, No. 1:25-cv-12595 (Dkt. No. 34) (same). Kalshi's latest attempt at removal is a waste of both the Court's and the Commonwealth's time and resources. The *Nessel* court warned Kalshi that its decision may be "the tipping point" to award attorney fees. No. 1:26-cv-731 (Dkt. No. 20). Given the opinion in *Nessel*, along with Judge Van Tatenhove's recent opinion addressing Kalshi's removal arguments, *Kentucky Gambling Recovery*, 2026 WL 596107, this Court should find that, at least in this district, the tipping point has now been reached.

**CONCLUSION**

The Commonwealth respectfully requests that the Court grant this Motion to Remand, remand this case to the Franklin Circuit Court of the Commonwealth of Kentucky, and, pursuant to 28 U.S.C. § 1447(c), award the Commonwealth its costs and fees associated with removal.

DATED: July 20, 2026

Respectfully submitted:

By: */s/ Alex L. Scutchfield*

RUSSELL COLEMAN
Kentucky Attorney General
Daniel Keiser (KBA No. 100264)
Alex Scutchfield (KBA No. 87009)
J. Christian Lewis (KBA No. 87109)
Justin Clark (KBA No. 89313)

Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Phone: (502) 696-5300
daniel.keiser@ky.gov
alex.scutchfield@ky.gov
christian.lewis@ky.gov
justindclark@ky.gov

Adam J. Levitt*
Daniel R. Ferri*
Joseph Nelson, Jr.*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
jnelson@dicellolevitt.com

*Attorneys for the Commonwealth of Kentucky*

*Motions for admission *pro hac vice* to be filed