UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, EX REL. ATTORNEY GENERAL, RUSSELL COLEMAN,<br>*Plaintiff*,<br>v.<br>KALSHIEX LLC, KALSHI INC., KALSHI KLEAR INC., KALSHI KLEAR LLC, KALSHI TRADING LLC, ROBINHOOD MARKETS, INC., ROBINHOOD DERIVATIVES LLC, WEBULL CORPORATION, and COINBASE FINANCIAL MARKETS, INC.,<br>*Defendants*. | Case No. 3:26-cv-00048-REW<br><br>Judge: Hon. Robert E. Wier |

**THE KALSHI DEFENDANTS'**
**<u>OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>**

## PRELIMINARY STATEMENT

This case should not be remanded. The Commonwealth of Kentucky seeks to use state gambling laws to ban the Defendants in this action from offering event contracts in Kentucky on designated contract markets ("DCMs") registered with the Commodity Futures Trading Commission ("CFTC").[1] While the Commonwealth portrays this suit as a garden-variety state claim, it is not. Kentucky seeks to stop the trading of federally regulated derivatives on a CFTC-regulated exchange. To do so, it must prove KalshiEX's event contracts are not *bona fide* transactions authorized by federal law. That cannot be done without construing the Commodity Exchange Act ("CEA"), the CFTC's exercise of exclusive jurisdiction, and the federal regulatory framework governing DCMs.

There are three independent bases for federal jurisdiction here. *First*, the Commonwealth's claims necessarily raise disputed and substantial issues of federal law that should be resolved by this Court. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). To prove its state law claims, the Commonwealth must show that event contracts traded on KalshiEX are unlawful. That showing cannot be made without deciding the threshold federal-law question its own Complaint puts at issue: whether those contracts are federally regulated swaps traded on a CFTC-licensed DCM under the CEA. The Commonwealth's Consumer Protection and Unfair Acts and Practices claims are specifically premised on the theory that certain Kalshi statements, such as that its event contracts are "[l]egal in all 50 states," are false and misleading. The Commonwealth cannot prove those claims without considering the substantial and disputed question of whether the CEA permits

[1] Defendant Coinbase Financial Markets, Inc. joins in this Opposition to Plaintiff's Motion to Remand. Defendants Robinhood Markets, Inc. and Robinhood Derivatives LLC join in this Opposition to Plaintiff's Motion to Remand for purposes of Argument Section I; with respect to Argument Section II, proper removal under 28 U.S.C. § 1442 removes the entire case, including non-officer defendants. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1084 n.7 (6th Cir. 2010).

Kalshi to offer event contracts on its nationwide exchange. Moreover, the Loss Recovery Act and KRS 528.010 both exclude conduct that is otherwise lawful from the reach of those statutes.

The Commonwealth's lead argument for remand (Mem. in Supp. of Mot. to Remand 9-10, Dkt. No. 29-1 (the "Mot."))—that Kalshi Defendants have repackaged a preemption defense—mischaracterizes Defendants' position (Notice of Removal ¶¶ 17-21, Dkt. No. 1). The federal issues here are embedded in the elements of the Commonwealth's claims, not raised as a defense to otherwise complete state-law claims. To be sure, although not the basis for removal here, application of state law to transactions on a DCM, like Kalshi, *is* preempted, as the Third Circuit and several district courts have concluded. The Third Circuit—the only federal court of appeals to have weighed in on the merits—held that the CEA "preempts otherwise applicable state laws that purport to regulate sports-related event contracts on CFTC-licensed DCMs." *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 228 (3d Cir. 2026), *aff'g* 2025 WL 1218313 (D.N.J. Apr. 28, 2025); *see also United States v. Minnesota*, --- F. Supp. 3d ---, 2026 WL 2150211, at *14-16 (D. Minn. July 27, 2026) (holding that the CEA's grant of "exclusive jurisdiction" to the CFTC over swaps traded on DCMs expressly preempts Minnesota's prediction market statute); *KalshiEX LLC v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026), *appeal docketed*, No. 26-5235 (6th Cir. Mar. 23, 2026); *KalshiEX LLC v. Johnson*, --- F. Supp. 3d ---, 2026 WL 1223373, at *3 (D. Ariz. May 5, 2026).

Those decisions and other pending litigation confirm that the federal question necessarily raised in *this* state law complaint is substantial and disputed. The United States and the CFTC have underscored the importance of the federal interests at stake by filing affirmative suits in federal

courts to enjoin states from enforcing state gambling laws against CFTC-regulated DCMs.[2] Most significantly, the CFTC has sued Kentucky itself, seeking a declaration that Kentucky's gambling laws are preempted as applied to CFTC-regulated DCMs. Ky. Compl. That parallel federal action confirms that issues raised here belong in this forum: they will be resolved by a federal court regardless of whether this case is remanded, and the only issue is whether a Kentucky state court will simultaneously decide the same issues, risking inconsistent results on matters within the CFTC's exclusive jurisdiction.

That posture also answers the Commonwealth's refrain that Kalshi Defendants are simply recycling arguments that have already been rejected. That characterization ignores both the Kentucky-specific circumstances presented here and the rapidly developing federal landscape. Nor is it correct that every court has rejected removal in analogous circumstances. At least one federal court presented with similar loss recovery claims as to KalshiEX's event contracts denied remand and found that federal law governed the validity inquiry at the heart of the dispute. *See Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-cv-310 (CDL), 2026 WL 279375, at *3 (M.D. Ga. Feb. 3, 2026).

*Second*, removal is proper under 28 U.S.C. § 1442(a)(2) because KalshiEX's and Kalshi Klear's designations as a DCM and a designated clearing organization ("DCO"), respectively,

---

[2] *See* Compl., *United States v. Arizona*, No. 26-cv-2246 (D. Ariz. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. Connecticut*, No. 26-cv-498 (D. Conn. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. Illinois*, No. 26-cv-3659 (N.D. Ill. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. New York*, No. 26-cv-3404 (S.D.N.Y. Apr. 24, 2026), Dkt. No. 1; Compl., *United States v. Wisconsin*, No. 26-cv-749 (E.D. Wis. Apr. 28, 2026), Dkt. No. 1; Compl., *United States v. Minnesota*, No. 26-cv-2661 (D. Minn. May 19, 2026), Dkt. No. 1; Compl., *United States v. New Mexico*, No. 26-cv-1912 (D.N.M. June 12, 2026), Dkt. No. 1; Compl., *United States v. Kentucky*, No. 26-cv-49 (E.D. Ky. June 23, 2026), Dkt. No. 1 ("Ky. Compl."); and Intervenor Compl., *KalshiEX LLC v. Furcolo*, No. 26-cv-327 (D.R.I. June 26, 2026), Dkt. No. 37 (collectively, the "CFTC Complaints") (seeking to enjoin state enforcement of anti-gambling laws against commodity derivatives and swaps traded on CFTC-regulated DCMs).

constitute property derived from the CFTC, and the Commonwealth's action directly affects the validity of the CEA. Indeed, if successful, it would pose a fundamental threat to the CFTC's exclusive jurisdiction under the CEA, risk creating a patchwork of state regulation that the CEA is designed to avoid, and risk invalidating the definition of "swap" in the CEA.

*Finally*, the Commonwealth cannot evade federal jurisdiction through artful pleading. Under Kentucky Civil Rule 19.01, the Commonwealth was required to name the CFTC—a necessary party—and its strategic omission of the CFTC cannot defeat removal under 28 U.S.C. § 1442(a)(1).

For these reasons and those that follow, the motion to remand should be denied.

## BACKGROUND

### A. The CEA Grants the CFTC Exclusive Jurisdiction Over Trading on DCMs

Congress enacted the CEA to centralize regulation of derivatives trading in a single federal agency, the CFTC. The CEA grants the CFTC "exclusive jurisdiction" over "transactions involving swaps or contracts of sale of a commodity for future delivery . . . traded or executed on a [designated] contract market." 7 U.S.C. § 2(a)(1)(A). This broad grant over instruments traded on federally regulated exchanges was intended to "prevent any possible conflicts over jurisdiction." *Review of Commodity Exchange Act and Discussion of Possible Changes: Hearings Before the H. Comm. on Agric.*, 93d Cong., 1st Sess. 128 (1974). "[D]ifferent State laws would just lead to total chaos" absent "preemption." *Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong., 2d Sess. 685 (1974) (statement of Sen. Clark); *see also Flaherty*, 172 F.4th at 230.

The CFTC's exclusive jurisdiction encompasses swaps, which include the event contracts at issue in this case. 7 U.S.C. §§ 2(a)(1)(A), 7a-2(c)(5)(C)(i). Swaps are defined broadly as any transaction that provides for "any purchase, sale, payment, or delivery . . . dependent on the

occurrence, nonoccurrence, or the extent of the occurrence of an event . . . associated with a potential financial, economic, or commercial consequence." *Id.* § 1a(47)(A)(ii). Event contracts allow users to take "yes" or "no" positions on a specified future event, such as whether the seasonally adjusted unemployment rate reported by the Bureau of Labor Statistics will exceed a certain percentage or whether a team scores a certain number of points in a particular sporting event.

### B. Event Contracts Traded on KalshiEX's DCM Are Subject to Extensive Federal Regulation

In 2020, the CFTC designated KalshiEX as a DCM. *See KalshiEX LLC v. CFTC*, No. 23-3257 (JMC), 2024 WL 4164694, at *4 (D.D.C. Sep. 12, 2024). Designation requires an exchange to comply with a comprehensive regime of federal oversight, including 23 "Core Principles" governing market manipulation, risk minimization, recordkeeping, and capital reserves. 7 U.S.C. § 7(d); 17 C.F.R. § 38.3(a)(2). Since its approval, KalshiEX has been regulated under federal law alongside other DCMs, like the Chicago Mercantile Exchange.

KalshiEX offers many kinds of event contracts related to climate, technology, popular culture, economics, and agricultural and other tangible commodities. In January 2025, KalshiEX began offering contracts on sports events. When KalshiEX first self-certified its sports-event contracts, the CFTC asked KalshiEX to submit a "[d]emonstration of compliance" with the CEA. 17 C.F.R. § 38.5(b). KalshiEX responded with detailed filings describing the contracts' compliance with the CEA and CFTC regulations. *Orgel*, 2026 WL 474869, at *5. The CFTC took no further action. It has since permitted KalshiEX and other prediction markets to list tens of thousands of sports-event contracts without objection.

DCMs like KalshiEX partner with service providers and other intermediaries, including DCOs and futures commission merchants ("FCMs"), to facilitate trading and access to event

contracts. Extensive federal regulations govern DCOs and FCMs, too. *See, e.g.*, 17 C.F.R. § 39.3(a)(1) (setting forth procedures for an entity's registration as a DCO). For example, FCMs must file comprehensive financial reports with the CFTC, *id.* § 1.10(b), meet minimum capital requirements, *id.* § 1.17, and comply with CEA requirements designed to ensure market integrity and fairness, *e.g.*, 7 U.S.C. §§ 6d (requiring conflict-of-interest safeguards and designation of a compliance officer), 13(a) (prohibiting market manipulation and misleading statements).

Some of the named Defendants in this case serve in those roles. For example, Defendant Kalshi Klear LLC is a CFTC-registered DCO that provides clearing services for event contracts traded on KalshiEX's DCM. And Defendants Coinbase Financial Markets and Robinhood Derivatives are CFTC-registered FCMs that have partnered with KalshiEX to make its event contracts available through their platforms.

### C. This Litigation, Related Federal Court Actions, and Regulatory Developments

On June 17, 2026, the Commonwealth sued Defendants in Franklin Circuit Court, asserting state law claims arising under the Kentucky Consumer Protection Act (KRS 367.110 *et seq.*) (the "KCPA"), the Loss Recovery Act (KRS 372.005 *et seq.*) (the "LRA"), and Kentucky's gambling device statute (KRS 528.010 *et seq.*), and seeking declaratory and injunctive relief, as well as civil penalties, restitution, and treble damages in connection with Defendants' sports-related operations. *See* Notice of Removal Ex. 3, Dkt. No. 1-3 (the "Compl."). Two days after the Complaint was filed, Kalshi, with consent from all Defendants, removed this action under 28 U.S.C. §§ 1331, 1441, and 1442, asserting that those claims necessarily raise disputed and substantial questions of federal law, that KalshiEX and Kalshi Klear are holders of property derived from the CFTC, and that the Commonwealth attempted to avoid federal officer jurisdiction through artful pleading. *See* Notice of Removal, Dkt. No. 1.

Less than two weeks after the Commonwealth sued Defendants, the United States and CFTC sued Kentucky in this District to stop Kentucky from regulating event contracts as gambling or forcing prediction market participants to litigate in state court. *See* Ky. Compl. As the CFTC explained, Kentucky's "attempts to shut down federally regulated DCMs intrude on the exclusive federal scheme Congress designed to oversee national swaps markets." *Id.* ¶ 6. The CFTC sought a judgment declaring that the state laws Kentucky wishes to enforce are "preempted, unconstitutional and invalid . . . as applied to CFTC-regulated [DCMs]," and an injunction that would bar Kentucky from enforcing those provisions by pursuing this action. *Id.* at 29. That parallel federal action is pending before this Court, with the parties due to cross-move for summary judgment later this month. *See* Order, *United States v. Kentucky*, No. 26-cv-49 (E.D. Ky. July 21, 2026), Dkt. No. 16.

KalshiEX, Kalshi Klear, and other federally registered entities are also litigating these issues with other parties, including several additional states, in federal courts across the country. In April, the Third Circuit affirmed a preliminary injunction order barring New Jersey from enforcing state gambling laws against KalshiEX. *Flaherty*, 172 F.4th at 232. In doing so, the court held that the CEA "preempts state gambling laws that seek to regulate futures trading, *i.e.*, KalshiEX's sports-related event contracts traded on a DCM under the exclusive jurisdiction of the CFTC." *Id.* at 230. Thus, Kentucky's suggestion that federal courts have uniformly rejected Kalshi Defendants' position—which is itself incorrect, *see Georgia Gambling*, 2026 WL 279375, at *3—obscures the critical distinction between remand rulings and the federal merits question those cases necessarily implicate. On that question, the only appellate decision on the merits has recognized

the federal interest Kalshi Defendants invoke here. Appeals relating to similar issues are pending in the Second, Fourth, Sixth, Seventh, Ninth, and Tenth Circuits.[3]

The CFTC's recent actions underscore that this case is not an ordinary state gambling dispute, but part of a nationwide federal-state conflict over whether states may apply gambling laws to commodities derivatives traded on CFTC-regulated DCMs. The CFTC's June 2026 notice of proposed rulemaking reinforces the same point, explaining that the CEA grants the CFTC "exclusive jurisdiction" over a comprehensive federal regulatory framework that preempts conflicting state law and confirming that event contracts like KalshiEX's are derivatives subject to CFTC jurisdiction. Prediction Markets; Public Interest Determinations, 91 Fed. Reg. 35,806, 35,808 (proposed June 12, 2026) (to be codified at 17 C.F.R. pt. 40) ("NPRM") (stating that the CEA "granted the CFTC exclusive jurisdiction" to create "a comprehensive federal regulatory framework that expressly preempts state laws").

## ARGUMENT

### I. THE COMMONWEALTH'S CLAIMS NECESSARILY RAISE DISPUTED AND SUBSTANTIAL FEDERAL QUESTIONS UNDER *GRABLE*

Federal courts have jurisdiction over state law claims that "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Jurisdiction lies where the embedded federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Each requirement is satisfied here.

[3] *See KalshiEX LLC v. Williams*, No. 26-1835 (2d Cir.); *KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir.); *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir.); *see also* Order at 1, *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir. Apr. 24, 2026), Dkt. No. 26-2 (noting that "Kalshi has raised serious questions on the merits" and "courts have reached conflicting conclusions"; denying KalshiEX's request for relief "[a]t this early stage").

### A. Federal Law Is Necessarily Raised by the Commonwealth's Claims

A federal law issue is "necessarily" raised when "the vindication of [the plaintiff's] right[s] under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted). A court looks to the "elements" of the plaintiff's claim and asks if any element requires the plaintiff to apply federal law to the "facts of [its] case" in order "[t]o prevail." *Gunn*, 568 U.S. at 259. Here, Plaintiff cannot obtain relief without this Court construing the Unlawful Internet Gambling Enforcement Act ("UIGEA") and the CEA, and addressing the applicability of both to KalshiEX's event contracts. Several of the Commonwealth's claims rely on construing federal law, and even a single claim arising under federal law makes the entire action removable, such that the Court may exercise supplemental jurisdiction over every related claim. 28 U.S.C. §§ 1367(a), 1441(a).

#### 1. The KCPA Claims Require Resolution of Whether KalshiEX's Event Contracts Are Federally Authorized

The KCPA claims allege that Kalshi Inc. and KalshiEX conveyed a "false, deceptive, and misleading impression that the sports wagers that they offer through their prediction market are lawful, and not void, in Kentucky" (Compl. ¶¶ 121-22, quoted at Mot. 10). In support of these claims, the Commonwealth alleges that Kalshi Inc. and KalshiEX have stated that KalshiEX's offerings are lawful *nationwide*. *See* Compl. ¶¶ 95, 102-104. The Complaint alleges, over and again, that Kalshi's advertisements are unlawfully false or misleading because they state that (i) "[Kalshi's] platform offer[s] a *'legal'* way to 'bet' on sports *in all 50 states*," (ii) its sports event contracts are *"[l]egal in all 50 states*," (iii) Kalshi offers "100% legal sports trading to all 50 states," and (iv) Kalshi is the "First *Nationwide Legal* Sports Betting Platform." *Id.* (emphasis added). The Commonwealth cannot prove that those statements were false or misleading for the

purposes of its Consumer Protection and Unfair Acts and Practices claims without considering whether the CEA (or UIGEA) makes them true.

The Commonwealth argues (Mot. 10) that the relevant question is whether KalshiEX's offerings are permissible under Kentucky law only. But the challenged statements do not say that Kalshi's event contracts are permissible under Kentucky's state gambling statutes; the Commonwealth challenges statements that Kalshi is *legal in all 50 states. Supra* (quoting Compl. ¶¶ 95, 102-104). In order to prove their claim that such statements are misleading, the Commonwealth will have to prove that Kalshi's event contracts *are <u>not</u> legal in all 50 states. Id.*; *see also id.* ¶¶ 121-122 (challenging those statements as "false, deceptive, and misleading"). This *necessarily* requires the Court to determine whether KalshiEX's offerings *are* lawful, nationwide, under federal law—a determination that cannot be made without interpreting the CEA and CFTC regulations. *See Flaherty*, 172 F.4th at 230 (if the CEA grants the CFTC exclusive jurisdiction over event contracts and the CFTC has authorized their trading on DCMs, then those contracts are lawful in the state).

The Complaint further alleges that Kalshi misleadingly portrays its products as "swaps" or "event contracts," when they are allegedly, instead, prohibited "bets." *See, e.g.*, Compl. ¶ 83 ("A wager on the outcome of a sporting event is not a 'swap' as defined in 7 U.S.C.A. § 1a(47)(A)(ii)."), ¶ 88 (similar), ¶ 90 (similar), ¶ 94 (alleging that "despite attempting to distance itself from online gambling when legally convenient, Kalshi has separately acknowledged that it is in direct competition with online sportsbooks"), ¶ 95 (alleging that "Kalshi has run ads explicitly calling sports event contracts purchased on their platforms 'bets' and stating that its platform offer a 'legal' way to 'bet' on sports in all 50 states"). The Court cannot resolve the Commonwealth's unfair acts and practices claim without construing federal law defining these terms. *See, e.g.*, 7 U.S.C.A. § 1a(47)(A)(ii) (definition of "swap"); 7 U.S.C.A. § 7a-2(c)(5)(C) (special rule for "event

contracts"). Whether Kalshi's event contracts are *bona fide* swaps or event contracts under federal law is no less substantial or disputed than the question of whether offering such products nationwide, in all 50 states, is legal. *See, e.g.*, *Flaherty*, 172 F.4th at 227-28 (holding that Kalshi's sports-event contracts "fit within the [CEA's] definition of 'swaps' subject to the CFTC's jurisdiction"); *KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7-8 (M.D. Tenn. Feb. 19, 2026), *appeal docketed*, No. 26-5235 (6th Cir. Mar. 23, 2026) (holding that Kalshi's sports-event contracts are swaps). On the face of the Complaint, the Commonwealth's state-law claims cannot be answered without first resolving these substantial, disputed federal questions.

Finally, the Complaint alleges the challenged conduct is "not outweighed by countervailing benefits to consumers" (Compl. ¶ 131). Under the well-pleaded complaint rule, jurisdiction is assessed "from what necessarily appears in the plaintiff's statement of his own claim." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10 (1983). By pleading the absence of "countervailing benefits," the Commonwealth put those benefits at issue, and the CEA-recognized benefits of federally regulated derivatives markets (price discovery, hedging, uniform national access, 7 U.S.C. § 5(a)) cannot be evaluated without construing federal law. That is enough to raise a federal question, regardless of whether "countervailing benefits" would otherwise be a formal element of the KCPA unfairness test under *Ford Motor Co. v. Mayes*, 575 S.W.2d 480 (Ky. Ct. App. 1978), and KRS 367.170. A plaintiff cannot plead a federal issue into its case and then disclaim it for jurisdictional purposes. *Cf. Gunn*, 568 U.S. at 259 (federal question exists where the plaintiff must apply federal law to the facts "[t]o prevail").

#### 2. Whether KalshiEX's Event Contracts Constitute Sports Wagering Under Kentucky Law Cannot Be Determined Without Construing the UIGEA

To prevail on its claims and obtain an injunction against "sports wagering" (Compl. ¶¶ 49-53, 96), the Commonwealth must prove KalshiEX's sport-event contracts are illegal gambling.

That is the premise of the Complaint: the Commonwealth alleges that KalshiEX's sports-event contracts "meet[] the legal definition of sports wagering under Kentucky law" because they involve "wagering . . . on sporting events or portions of sporting events, or on the individual performance statistics of athletes in a sporting event or combination of sporting events." Compl. ¶¶ 96, 99 (citation omitted); *id.* at ¶¶ 4, 27. But the definition of "sports wagering" under Kentucky law requires a showing that the wagering be conducted both "*in conformance with federal law* and as authorized by the corporation pursuant to this chapter." KRS 230.210(42) (emphasis added). The Commonwealth therefore cannot prove KalshiEX's offerings are "sports wagering" without construing whether federal law, including the CEA and UIGEA, authorizes such contracts—*i.e.* that they are "in conformance with federal law." This is not a defense to Kentucky's preferred remedy; it is a threshold element of the Commonwealth's theory of illegality.

The Complaint confirms the point. Far from avoiding federal law, it affirmatively alleges that "[a] wager on the outcome of a sporting event is not a 'swap' as defined in 7 U.S.C.A. § 1a(47)(A)(ii)." Compl. ¶¶ 83, 88, 90. The Complaint further invokes the Interstate Horseracing Act, *id.* ¶ 1 (quoting 15 U.S.C. § 3001(a)(1)), pleads that Kalshi Klear "operates as a CFTC-registered derivatives clearing organization," *id.* ¶ 15, and expressly avers that "jurisdiction is not exclusively vested in another court," *id.* ¶ 8. The Commonwealth's assertion that its Complaint "does not include a single reference to federal law" (Mot. 6-7) is therefore incorrect. Because the Complaint pleads the CEA "swap" question as part of the Commonwealth's theory of illegality, that question "necessarily appears in the plaintiff's statement of his own claim." *Franchise Tax Bd. of Cal.*, 463 U.S. at 10 (citation omitted). Nor can the Commonwealth escape that conclusion by hypothesizing (Mot. 8-9) that its claims would be unaltered if the CEA "were to cease to exist." The CEA exists, the Complaint expressly pleads around it, and jurisdiction turns on the pleading the Commonwealth actually filed—not on a hypothetical complaint in a world without federal law.

In short, the Complaint alleges that Kalshi's event contracts are not swaps or event contracts under federal law, but are instead unlawful wagers. "Swap" and "event contract" are defined by federal statute. *See* 7 U.S.C. § 1a(47)(A)(ii) (definition of "swap"); 7 U.S.C. § 7a-2(c)(5)(C) (special rule for "event contracts"). And federal law similarly defines "bets" and "wagers" transmitted in interstate commerce in UIGEA, which prohibits the use of the internet to transmit wagers between states "where such bet or wager is unlawful," 31 U.S.C. § 5362(10)(A). But the definition of "bet or wager" under UIGEA "does not include" transactions conducted on "a registered entity . . . under the Commodity Exchange Act," *id.* § 5362(1)(E). KalshiEX's event contracts are traded on a CFTC-licensed DCM. Thus, determination of whether Kalshi's event contracts qualify as "swaps" or "event contracts," as opposed to unlawful wagering under state law, necessarily requires interpreting the CEA and UIGEA. These embedded federal issues are the foundation of the Commonwealth's case—not an anticipated defense—and thus supply *Grable* jurisdiction. *Grable*, 545 U.S. at 314; *Gunn*, 568 U.S. at 259; *see Arrington v. Medtronic, Inc.*, 130 F. Supp. 3d 1150, 1158-59 (W.D. Tenn. 2014) (*Grable* jurisdiction exists where "a plaintiff's right to relief necessarily depends on a question of federal law").

**3. The Commonwealth Cannot Prevail on Its Loss Recovery Act Claim Without Construing Federal Law**

The Commonwealth also asserts claims under the LRA. KRS 372.010 voids gambling transactions, and KRS 372.020 and 372.040 authorize recovery of losses. KRS 372.005 provides that the LRA's provisions "do not apply to betting, gaming, or wagering that has been authorized, permitted, or legalized." The meaning and application of this language necessarily raise a federal question because whether KalshiEX's event contracts have been "authorized, permitted, or legalized" requires interpreting the CEA and the CFTC's regulatory actions.

The Commonwealth relies heavily on the court's ruling in *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-00054-GFVT, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026) (Mot. 1, 5, 12, 20), which characterized KRS 372.005 as an "affirmative defense" under *Cunningham v. Cornell University*, 604 U.S. 693 (2025). That characterization is incorrect and, in any event, cannot carry the Commonwealth's broader remand argument.

Kentucky appellate courts have treated KRS 372.005 as part of the plaintiff's burden. In *Kirby v. Keeneland Ass'n, Inc.*, 672 S.W.3d 212 (Ky. Ct. App. 2023), the court held that wagering "authorized and permitted" by the Racing Commission falls within the safe harbor and affirmed dismissal at the Rule 12(b)(6) stage. Similarly, *Workman v. Kentucky Downs, LLC*, 672 S.W.3d 217, 221 (Ky. Ct. App. 2022), affirmed dismissal where wagering was "authorized, permitted, or legalized" by regulatory action. These decisions treated KRS 372.005 as a basis for dismissal on the pleadings, confirming that the statute's authorization inquiry is not a collateral matter that can be postponed as a routine defense where the pleadings themselves place authorization at issue.

Further, the court's order in *Kentucky Gambling Recovery* relied heavily on the misperception that "the federal government does not find this particular question particularly important." *Kentucky Gambling Recovery*, 2026 WL 596107, at *6. To the contrary, the CFTC's own enforcement suit against Kentucky, together with the June 2026 NPRM, make clear that the use of state law to interfere with its exclusive jurisdiction over designated contract markets is of vital importance to the CFTC and to the national economy, making the federal question undeniably substantial.

### 4. The Commonwealth Mischaracterizes Kalshi Defendants' Jurisdictional Theory as a Mere Preemption Defense

The Commonwealth contends (Mot. 9-10) that Kalshi Defendants' position reduces to a federal preemption defense barred by *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). But

*Caterpillar* addressed complete preemption, not the embedded federal issue doctrine at stake here. Under *Grable*, federal jurisdiction attaches where a federal issue is necessarily raised in the plaintiff's own claim, not asserted as a defense. 545 U.S. at 314; *see also Merrell Dow*, 478 U.S. at 808 (jurisdiction turns on whether "the vindication of [the plaintiff's] right[s] under state law necessarily turn[s] on some construction of federal law"). That is precisely the case: the Commonwealth cannot establish the substantive elements of its claims without establishing that KalshiEX's offerings fall outside the CEA's coverage. The federal issues arise through the state law's own definitional structure, not in a defensive posture. Calling the same federal question "preemption" does not change where it appears: on the face of the Commonwealth's theory of illegality.

The Commonwealth argues (Mot. 11-13) that the LRA safe harbor is merely an affirmative defense. But Kalshi Defendants' jurisdictional theory rests on the *separate* ground that the CEA's exclusive jurisdiction places event contracts outside of the scope of gambling under Kentucky law—an issue necessarily raised on the face of the Commonwealth's claims. The KRS 372.005 safe harbor is one of multiple independent bases on which federal law is necessarily raised.

The Commonwealth claims (Mot. 1-2, 5-6) that courts have rejected Kalshi Defendants' arguments. The cited decisions, however, confronted different state statutory schemes, involved different arguments, and are non-binding. None resolves each of the Kentucky-specific federal questions presented here: whether federally regulated event contracts are unlawful wagers, void transactions, deceptive offerings, or gambling devices without first determining their status under the CEA. A federal court has denied remand in a structurally analogous setting, finding that whether an event contract is unlawful is defined by reference to the law governing the validity of the contract. *Georgia Gambling*, 2026 WL 279375, at *3. The Commonwealth's contrary

authorities therefore show only that courts have reached different results on different pleadings, statutes, and records.

### B. The Federal Issues Are Actually Disputed, Substantial, and Best Resolved in Federal Court

The federal issue—whether KalshiEX's event contracts are unlawful gambling or are *bona fide* swap transactions traded on a federal exchange subject to the CFTC's exclusive jurisdiction—is "actually disputed." It is the central point of contention in this litigation and in dozens of other cases pending in district and appellate courts. The Third Circuit has issued a precedential decision in Kalshi Defendants' favor, federal courts in Arizona and Minnesota have granted the CFTC injunctive relief, appeals are pending in several circuits, and district courts have reached competing outcomes. *See supra* p. 2. Those conflicting and rapidly developing rulings confirm that the federal issue is both "actually disputed" and "substantial." *See Gunn*, 568 U.S. at 258.

The remaining two *Grable* elements are also satisfied. The federal issues here are substantial because they are of "importance . . . to the federal system as a whole." *Gunn*, 568 U.S. at 260. The federal interest in regulating nationwide derivatives markets is undoubtedly strong. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 390 (1982). Were the Commonwealth to prevail, KalshiEX's conduct would be simultaneously lawful under federal law—which permits event contracts on KalshiEX's DCM in all 50 states—and unlawful under Kentucky's gambling laws. That irreconcilable conflict, together with the CFTC's parallel enforcement suit against the Commonwealth in this District, confirms substantiality.

Nor would exercising jurisdiction disrupt the federal-state balance approved by Congress. Because the CFTC's parallel suit against Kentucky in this District raises the same federal questions, a federal court will resolve those questions regardless; the only question is whether a state court will simultaneously decide them, risking inconsistent results on matters within the

CFTC's exclusive jurisdiction. Retaining jurisdiction here will not "attract[] a horde" of gambling cases into federal court but will resolve a recurring federal issue arising only when states apply gambling laws to transactions on CFTC-licensed exchanges—a category that will "portend only a microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 309, 318. That is the narrowness that matters for federalism purposes: ordinary gambling cases remain in state court, while cases turning on the status of federally regulated swaps traded on DCMs belong in a federal forum. Denying a federal forum, by contrast, would upset the conscious legislative choice to place trading on DCMs within the CFTC's exclusive jurisdiction—the opposite of the federalism concern that animated *Murphy v. NCAA*, 584 U.S. 453 (2018), which reserves state authority only where Congress has *not* placed conduct under exclusive federal oversight.

## II. REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE

As the Supreme Court recently reaffirmed, the federal officer removal statute protects the federal government and private parties acting thereunder from state court interference with their operations, and the statute must be read broadly. *Chevron USA, Inc. v. Plaquemines Par.*, 608 U.S. 1, 15 (2026).

Here, the Commonwealth's claim directly conflicts with actions taken by a federal agency pursuant to federal law. The CFTC has claimed a substantial interest in the scope of its exclusive jurisdiction, and has initiated litigation against nine states, including Kentucky, that are attempting to curtail that jurisdiction by enforcing preempted state laws. *See generally* CFTC Complaints. In these circumstances, removal under 28 U.S.C. § 1442 is proper because the Commonwealth's action is directed at holders of property derived from the CFTC (KalshiEX's DCM designation and Kalshi Klear's DCO designation) and would affect the validity of the CEA, and because the

Commonwealth attempts to artfully plead around federal officer removal by excluding the CFTC—a necessary party—from this action.

### A. The Commonwealth's Action Directly Threatens Federally Conferred Rights and the CFTC's Exercise of Exclusive Jurisdiction

Section 1442(a)(2) authorizes removal of a civil action directed against "[a] property holder whose title is derived from any . . . officer [of the United States or of any agency thereof], where such action . . . affects the validity of any law of the United States." 28 U.S.C. § 1442(a)(2). Both elements are satisfied. The federal officer removal statute "must be 'liberally construed,'" and its application fits comfortably within the facts presented here. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007).

#### 1. Defendants Are Property Holders with Title Derived from the CFTC

KalshiEX's and Kalshi Klear's licenses to operate as a DCM and DCO, respectively, were approved by the CFTC pursuant to the CEA, *see* 7 U.S.C. §§ 7, 7a-2(c), and those federally issued licenses constitute property. More precisely, those licenses confer defined federal operating rights: the right to provide a federally regulated market and clearing infrastructure for swaps, subject to statutory revocation procedures and federal judicial review. The Supreme Court has long recognized that intangible rights with commercial value qualify as "property." *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005). And under Sixth Circuit law, federally issued licenses are recognized property interests. *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002); *Moody v. Mich. Gaming Control Bd.*, 790 F.3d 669, 673 (6th Cir. 2015). Defendants' CFTC-issued licenses create defined rights to provide services for trading swaps, are exclusively held unless transferred, and may be suspended or revoked by the CFTC only for cause and only after notice, a hearing, and an opportunity to appeal to federal court. 7 U.S.C. §§ 7b, 8(b); 17 C.F.R. § 38.3.

The Commonwealth's arguments to the contrary (Mot. 13-16) are unavailing. *St. Bernard Port, Harbor & Terminal District v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524 (E.D. La. 2011), turned on the fact that the defendant there possessed only a contract right, not title "derived from" a federal officer. *Id.* at 534-35. A federally issued license is different in kind: it is a clearly defined, exclusive right, revocable only for cause, that the Supreme Court and Sixth Circuit have recognized as property. *Pasquantino*, 544 U.S. at 355-56; *Med Corp.*, 296 F.3d at 409; *Moody*, 790 F.3d at 673. Unlike a negotiated contract right, KalshiEX's DCM and Kalshi Klear's DCO designations exist only because the CFTC conferred them under federal statute; they are not private contractual interests merely affected by federal regulation.

**2. The Commonwealth's Action Affects the Validity of the CEA**

The Commonwealth's action, if successful, would extinguish KalshiEX's right to operate as a nationwide market and override the CFTC's exclusive jurisdiction. Section 1442(a)(2) does not require wholesale invalidation; an action "affects the validity" of federal law where it would "evade . . . or otherwise frustrate" the statute's aims. *Carney v. Washington*, 551 F. Supp. 3d 1042, 1053-54 (W.D. Wash. 2021). Because Congress chose "affects the validity" rather than "invalidates," the Commonwealth's insistence on complete invalidation reads the provision more narrowly than its text supports.

The CFTC's July 14, 2026 order underscores this point. When KalshiEX sought to unwind open trades involving Michigan residents to comply with a Michigan state court order, the CFTC stayed KalshiEX's request and directed KalshiEX to "fulfill the open trades in question as it would in the ordinary course of business." Christopher J. Kirkpatrick, CFTC, Order Staying Emergency Rule Filed by KalshiEX LLC and Directing Kalshi to Fulfill Open Trades Involving Michigan Residents at 9 (July 14, 2026), https://perma.cc/82PB-J6QM (the "July 14 CFTC Order"). The CFTC explained that permitting KalshiEX to void open contracts "would risk shattering public

confidence," "financially damag[e] market participants," create "significant price volatility," and "cause distortions" in the market, and it made clear that "State courts cannot order the unwinding of executed swap transactions" within the CFTC's "exclusive jurisdiction." *Id.* at 2, 7-8. The injunctive relief Plaintiff seeks would place Kalshi Defendants in the same untenable position—forced either to disobey a direct order of its federal regulator or to violate a Kentucky injunction. That is sufficient to "affect[] the validity" of the CEA within the meaning of § 1442(a)(2).

The Commonwealth's reliance on *Veneruso*, *Town of Stratford*, *Faulk*, and *Cal. Dep't of Educ.* (Mot. 15-16), and on *Washington v. KalshiEX*, No. C26-1062-JCC, 2026 WL 1217743 (W.D. Wash. May 5, 2026) (Mot. 14), is misplaced. In *Veneruso*, *Town of Stratford*, *Faulk*, and *Cal. Dep't of Educ.*, the defendants argued only that their actions were *permitted* by federal law, not that federal law affirmatively required a step *inconsistent* with the relief the plaintiff sought. *See Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 632 (S.D.N.Y. 2013) (defendant argued "only that its actions were permitted by federal law, not that it would be required by federal law to take a step inconsistent with the result Plaintiff seeks"), *aff'd*, 586 F. App'x 604 (2d Cir. 2014); *Town of Stratford v. City of Bridgeport*, 434 F. Supp. 712, 713-714 (D. Conn. 1977) (raising a federal defense is not enough to show that an action "affects the validity" of a statute); *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 669 (E.D. Tex. 1999); *Cal. Dep't of Educ. v. S.F. Unified Sch. Dist.*, No. C-98-1417 MMC, 1998 WL 241603, at *4 (N.D. Cal. May 7, 1998). Here, by contrast, the Commonwealth's action, if successful, would require KalshiEX to stop operating in Kentucky, which conflicts with the CEA's requirement that DCMs operate as nationwide markets with impartial national access.

*Washington* is likewise distinguishable: it predates the CFTC's parallel enforcement suit against Kentucky in this District, the June 2026 NPRM, and the July 14 CFTC Order, all of which materially strengthen the property and validity showings under § 1442(a)(2). It also did not involve

a state enforcement action proceeding alongside an affirmative federal suit by the CFTC against the same sovereign concerning the same regulatory conflict. In any event, the district court there adopted *St. Bernard*'s real-property reading without independent analysis, 2026 WL 1217743, at *2, and the Ninth Circuit rejected KalshiEX's property-holder argument only in a single conclusory paragraph denying a stay pending appeal—not in resolving the merits of removal jurisdiction. Order at 2, *Washington v. KalshiEX, LLC*, No. 26-3106 (9th Cir. May 21, 2026), Dkt. No. 19.1. Neither decision examines the statutory text or the Supreme Court's recognition that intangible rights with commercial value are "property." The Commonwealth's further contention that this dispute concerns only the "interpretation" of the CEA, not its "validity," fares no better. Removal under § 1442(a)(2) is "proper even if only a defense depends on federal law." *Carney*, 551 F. Supp. 3d at 1053.

Kentucky's reliance on the statutory history of § 1442(a)(2) (Mot. 14) does not narrow the statute's modern reach. Congress amended the statute multiple times after 1833 to expand it beyond the original revenue officer context, and modern subsection (a)(2) contains no textual limitation to real property. Nothing in the statute's text—or in *Watson*'s command that § 1442 be "liberally construed"—supports importing a nineteenth-century real-property limitation into this provision, particularly where the courts have held that licenses of the kind at issue constitute federally issued property interests. *Watson*, 551 U.S. at 147; *see Pasquantino*, 544 U.S. at 355-56; *Med Corp.*, 296 F.3d at 409; *Moody*, 790 F.3d at 673.

### B. Artful Pleading Cannot Defeat Federal Officer Removal Under 28 U.S.C. § 1442(a)(1)

The Commonwealth's "artful pleading" of its Complaint provides a separate reason why remand is inappropriate. Under Kentucky Civil Rule 19.01, it was required to name the CFTC as

a party. Had it done so, this action would be removable under § 1442(a)(1). At minimum, the omission reinforces why this is not an ordinary state gambling case.

**1. Kentucky Law Required Joinder of the CFTC**

Rule 19.01 requires joinder of a party whose absence prevents complete relief or risks impairing its interest or subjecting existing parties to inconsistent obligations. Ky. R. Civ. P. 19.01. Complete relief cannot be accorded without the CFTC's presence. KalshiEX must provide nationwide "impartial access" to its platform, and the Commonwealth's requested relief would require different treatment for Kentucky users, conflicting with the CFTC's regulations. 17 C.F.R. § 38.151(b). The CFTC also "claims an interest relating to the subject of the action." *See* Ky. R. Civ. P. 19.01. It has sued Kentucky and other states to protect its exclusive jurisdiction and has asserted a substantial interest in the scope of that jurisdiction. *See generally* CFTC Complaints. The Commonwealth suggests (Mot. 18 n.3) that the CFTC's decision to file its own suit shows it does not view itself as necessary here. That inference is wrong: filing a parallel preemption suit confirms—rather than negates—the CFTC's direct, protectable interest. A judgment for the Commonwealth would impair the CFTC's ability to protect that interest and risk subjecting KalshiEX to inconsistent federal and state obligations. That risk is not hypothetical: the July 14 CFTC Order forced KalshiEX to choose between violating a state court's order and disobeying its federal regulator.

**2. The Commonwealth's Objections Do Not Defeat Jurisdiction**

*First*, the Commonwealth argues (Mot. 17), citing *Berera v. Mesa Medical Group, PLLC*, 779 F.3d 352 (6th Cir. 2015), that artful pleading applies only when a plaintiff disguises a federal cause of action, not when it declines to name a necessary party. That misreads both *Berera* and the artful pleading doctrine. *Berera* describes the doctrine at a general level and does not foreclose application where an omitted federal party would independently support removal. 779 F.3d at 358.

And federal officer removal doctrine does not permit plaintiffs to avoid removal by pleading around the federal interests that make the case removable. *See West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 195 (4th Cir. 2025). The point is not that every omitted party creates removal jurisdiction: it is that a plaintiff cannot manufacture a state-only case by omitting the federal agency whose legal authority is the object of the requested relief.

*Second*, the Commonwealth argues (Mot. 18-19), citing *Liquor Outlet, LLC v. Alcoholic Beverage Control Board*, 141 S.W.3d 378, 387 (Ky. Ct. App. 2004) (citation omitted), that a necessary party is "one whose absence prevents the Court from granting complete relief" or "one whose interest would be divested by an adverse judgment." Under that standard, the CFTC is a necessary party. Kentucky courts recognize regulatory agencies as necessary parties when litigation directly implicates their authority. *See Boyd & Usher Transp. v. S. Tank Lines, Inc.*, 320 S.W.2d 120, 123-24 (Ky. Ct. App. 1959); *A & H Truck Line, Inc. v. Ky. Occupational Safety & Health Rev. Comm'n*, 536 S.W.2d 315, 316 (Ky. 1976); *see also Energy Regul. Comm'n v. Ky. Power Co.*, 605 S.W.2d 46 (Ky. Ct. App. 1980). The CFTC's interest here is at least as direct: it has filed its own parallel lawsuit against Kentucky asserting preemption, and a judgment for the Commonwealth would impair the CFTC's exclusive jurisdiction over KalshiEX's federally licensed DCM and expose Kalshi Defendants to inconsistent federal and state commands. The CFTC is not a mere bystander with an abstract interest; it is an active litigant seeking to enjoin the very enforcement action at issue here.

*Third*, the Commonwealth cites *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560 (6th Cir. 2001) (Mot. 18), for the proposition that the Federal Rules of Civil Procedure govern in federal court. But that is irrelevant to the artful pleading analysis. Sixth Circuit law is clear that pre-removal procedural obligations are governed by state law: "State Rules govern[] actions taken while the matter remains in state court, and federal rules of procedure govern actions taken post-

removal." *United Steel Supply, LLC v. Buller*, No. 3:13-CV-00362-H, 2013 WL 3790913, at *2-3 (W.D. Ky. July 19, 2013). The question, therefore, is whether the Commonwealth was required, under state procedural rules, to join the CFTC. If so, its failure to do so constitutes artful pleading. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939) (removability is determined by the state court record at the time of the removal petition).

## III. FEES ARE UNWARRANTED BECAUSE REMOVAL WAS OBJECTIVELY REASONABLE

The Commonwealth asks the Court to award attorney fees and costs. Mot. 19-20. That request should be denied. Fees under 28 U.S.C. § 1447(c) are warranted only "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

The Commonwealth's reliance (Mot. 20) on *Kentucky Gambling Recovery* and the *Nessel v. KalshiEx, LLC* court's "tipping point" language does not warrant fees. Those non-controlling remand decisions do not make removal objectively unreasonable here. *Kentucky Gambling Recovery* involved a private LRA suit and did not address the full Kentucky enforcement complaint, the CFTC's parallel action against Kentucky, the July 14 CFTC Order, or the current record. And whatever persuasive weight *Nessel* may have in another case, it did not involve claims under Kentucky law, this District's parallel CFTC action, or the particular Kentucky statutory arguments presented here. No controlling circuit court authority rejects Kalshi Defendants' removal position. At most, the authorities show a contested and developing jurisdictional issue. They do not show that Kalshi Defendants lacked an objectively reasonable basis to remove.

## CONCLUSION

For the foregoing reasons, the Commonwealth's Motion to Remand should be denied. The Court should further deny the Commonwealth's request for attorney fees and costs.

Dated: August 10, 2026

By: /s/ *Grahmn N. Morgan*
Grahmn N. Morgan (KBA No. 89219)
Mary K. Callesen (KBA No. 101993)
Erica A. Ashton (KBA No. 99489)
**DINSMORE & SHOHL LLP**
100 West Main Street, Suite 900
Lexington, KY 40507
Phone: 859.425.1044
Fax: 859.425.1099
Grahmn.morgan@dinsmore.com
Kassie.callesen@dinsmore.com
Erica.ashton@dinsmore.com

Neal K. Katyal (*pro hac vice*)
Joshua B. Sterling (*pro hac vice*)
Colleen R. Sinzdak (*pro hac vice*)
William E. Havemann (*pro hac vice*)
**MILBANK LLP**
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone: 202.835.7500
Facsimile: 202.263.7586

Tawfiq S. Rangwala (*pro hac vice* forthcoming)
Grant R. Mainland (*pro hac vice*)
Katherine K. Fell (*pro hac vice*)
Matthew J. Laroche (*pro hac vice*)
Andrew L. Porter (*pro hac vice*)
Nicole D. Valente (*pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001-2163
Telephone: 212.530.5000
Facsimile: 212.530.5219

*Attorneys for Defendants KalshiEX LLC, Kalshi Inc., Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will send a notice of electronic filing to counsel of record.

This 10th day of August, 2026.

*/s/ Grahmn N. Morgan*
Grahmn N. Morgan

*Attorneys for Defendants KalshiEX LLC, Kalshi Inc., Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC*