**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, EX REL. ATTORNEY GENERAL, RUSSELL COLEMAN,<br><br>Plaintiff,<br><br>v.<br><br>KALSHIEX LLC et al.,<br><br>Defendants. | Case No. 3:26-cv-00048-REW<br><br>Hon. Robert E. Wier<br><br>Removed from the Franklin Circuit Court of the Commonwealth of Kentucky<br>Civil Case No. 26-CI-00689 |

**COMMONWEALTH OF KENTUCKY'S**
**REPLY BRIEF IN SUPPORT OF MOTION TO REMAND**

Dated: August 31, 2026

# TABLE OF CONTENTS

I. THE COURT CANNOT EXERCISE JURISDICTION UNDER *GRABLE*. .................... 1

A. The Commonwealth's KCPA Claims Do Not Raise a Federal Issue. .................... 2

B. The Commonwealth's Loss Recovery Act Claim Does Not Raise a Federal Issue. .................... 4

C. The Commonwealth's Claims Do Not Require Construction of the CEA or UIGEA. .................... 7

D. Exercising Jurisdiction Over the Commonwealth's State Law Gambling Claims Would Disrupt the Federal-State Balance. .................... 7

II. KALSHI FAILS TO SHOW THAT REMOVAL IS PROPER UNDER 28 U.S.C. § 1442(**a**). .................... 9

A. Section 1442(a)(2) Does Not Provide Kalshi a Path to Federal Jurisdiction. .................... 9

1. *Kalshi's Licenses Are Not "Title" to Property.* .................... 10

2. *This Action Does Not Affect the Validity of the CEA.* .................... 11

B. Section 1442(a)(1) Does Not Provide Kalshi with a Right to Federal Jurisdiction. .................... 12

III. THE COURT SHOULD AWARD THE COMMONWEALTH ITS COSTS AND ATTORNEY FEES. .................... 14

CONCLUSION .................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ah Sin v. Wittman*,
198 U.S. 500 (1905) ........ 8

*Atwood v. Casey Cnty.*,
137 S.W.2d 1079 (Ky. 1940) ........ 5, 7

*Berera v. Mesa Med. Grp., PLLC*,
779 F.3d 352 (6th Cir. 2015) ........ 13

*Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*,
617 S.W.3d 792 (Ky. 2020) ........ 5

*Carney v. Washington*,
551 F. Supp. 3d 1042 (W.D. Wash. 2021) ........ 12

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987) ........ 1, 2, 6

*Dillon v. Medtronic, Inc.*,
992 F. Supp. 2d 751 (E.D. Ky. 2014) ........ 2

*Dixon v. United States*,
548 U.S. 1 (2006) ........ 5

*Eastman v. Marine Mech. Corp.*,
438 F.3d 544 (6th Cir. 2006) ........ 9

*Faulk v. Owens-Corning Fiberglass Corp.*,
48 F. Supp. 2d 653 (E.D. Tex. 1999) ........ 11

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
463 U.S. 1 (1983) ........ 2, 8

*Georgia Gambling Recovery LLC v. Kalshi Inc.*,
2026 WL 279375 (M.D. Ga. Feb. 3, 2026) ........ 6, 7

*Gore v. DeAngelis*,
2025 WL 3280346 (N.D. Ohio Nov. 25, 2025) ........ 13

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) ........ 1, 2, 7, 8

*Gunn v. Minton*,
568 U.S. 251 (2013)....................2, 7, 8

*Hudak v. Elmcroft of Sagamore Hills*,
58 F.4th 845 (6th Cir. 2023)....................2

*Jones v. Bock*,
549 U.S. 199 (2007)....................6

*Kentucky Gambling Recovery LLC v. Kalshi Inc.*,
2026 WL 596107 (E.D. Ky. Mar. 4, 2026)....................6, 14

*Kirby v. Keeneland Ass'n, Inc.*,
672 S.W.3d 212 (Ky. Ct. App. 2023)....................6

*Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*,
141 S.W.3d 378 (Ky. Ct. App. 2004)....................13

*Martin v. Franklin Cap. Corp.*,
546 U.S. 132 (2005)....................14

*Med Corp. v. City of Lima*,
296 F.3d 404 (6th Cir. 2002)....................10

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986)....................2, 3, 4

*Moody v. Michigan Gaming Control Board*,
790 F.3d 669 (6th Cir. 2015)....................10

*Nessel v. KalshiEX, LLC*,
26-cv-00731-PLM (W.D. Mich. June 25, 2026) (ECF 20)....................7, 13, 14

*Nevada v. Bank of Am. Corp.*,
672 F.3d 661 (9th Cir. 2012)....................8

*New York v. Shinnecock Indian Nation*,
686 F.3d 133 (2d Cir. 2012)....................2

*Pasquantino v. United States*,
544 U.S. 349 (2005)....................10

*State ex rel. Slatery v. Tenn. Valley Auth.*,
311 F. Supp. 3d 896 (M.D. Tenn. 2018)....................13

*Tafflin v. Levitt*,
493 U.S. 455 (1990)....................9

*Town of Stratford v. City of Bridgeport*,
434 F. Supp. 712 (D. Conn. 1977)....11

*United States v. Washington*,
879 F.2d 1400 (6th Cir. 1989)....8, 11

*Veneruso v. Mount Vernon Neighborhood Health Ctr.*,
586 F. App'x 604 (2d Cir. 2014)....11

*Washington v. KalshiEX LLC*,
No. C26-1062-JCC, 2026 WL 1217743 (W.D. Wash. May 5, 2026)....10, 13

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007)....9

*W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
646 F.3d 169 (4th Cir. 2011)....8

*Willingham v. Morgan*,
395 U.S. 402 (1969)....9

**Statutes**

28 U.S.C. § 1441.... *passim*

28 U.S.C. § 1442.... *passim*

28 U.S.C. § 1447....14

Commodity Exchange Act.... *passim*

Kentucky Consumer Protection Act.... *passim*

Kentucky Loss Recovery Act....6, 7

KRS 372.005....5, 6

KRS 372.010....4, 5

KRS 372.040....4, 5

KRS 528.100....1

KRS Chapter 230....7

O.C.G.A. § 13-8-3....6

**Other Authorities**

Kentucky Civil Rule 19.01 ....................................................................................................13

Fed. R. Civ. P. 12(b)(6)..........................................................................................................6

Kalshi's opposition confirms that removal was inappropriate. Its contention that the Commonwealth's claims necessarily raise issues of federal law rests solely on its anticipated defense that those claims are preempted by the Commodity Exchange Act ("CEA"). The law is clear, however, that a preemption defense cannot support removal. Kalshi also fails to provide any authority to support a broad interpretation of the federal officer removal statute, 28 U.S.C. § 1442, allowing for removal by Kalshi, a private company that does not hold any title to real property derived from a federal officer. The Court should join the other courts from across the country, including within this District, that have rejected Kalshi's attempts to remove state law claims challenging its unlicensed sports wagering operation.

## I. THE COURT CANNOT EXERCISE JURISDICTION UNDER *GRABLE*.

A court may exercise federal question jurisdiction over state law claims only when those claims "necessarily raise a stated federal issue." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). The Commonwealth's KCPA and Loss Recovery Act[1] claims do not necessarily raise federal issues. The only federal issue that Kalshi identifies is whether its conduct is covered by the CEA. This is only relevant to Kalshi's preemption defense, and, as Kalshi concedes, defenses do not support removal. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").[2] Moreover, even if the Commonwealth's claims do necessarily raise a federal

---

[1] Kalshi does not contend that the Commonwealth's claim that Kalshi managed a gambling device under KRS 528.100 (Compl. ¶¶ 144-50) raises a federal issue.

[2] While Kalshi does not go so far as to assert that a federal issue raised in a defense can support removal, it attempts to distinguish *Caterpillar* by arguing that the opinion addressed the complete preemption doctrine, rather than the substantial federal question doctrine. The principle articulated

issue, the Court should refuse to exercise jurisdiction because doing so will infringe upon the traditional role of the states in regulating sports gambling. *See Grable*, 545 U.S. at 314 (limiting removal to actions that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.").

**A. The Commonwealth's KCPA Claims Do Not Raise a Federal Issue.**

A federal law issue is "necessarily" raised when "the vindication of [the plaintiff's] right[s] under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted). A court looks to the "elements" of the plaintiff's claim and asks if any element requires the plaintiff to apply federal law to the "facts of [its] case" in order "[t]o prevail." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

The Commonwealth asserts two claims against Kalshi under the KCPA. The first claim (Count 1) alleges that Kalshi "repeatedly conveyed the false, deceptive, and misleading impression that the sports wagers that they offer through their prediction market are lawful, and not void, ***in Kentucky***." (Compl. ¶¶ 121–22 (emphasis added)). To succeed on this claim, the Commonwealth need only prove that: (1) Kalshi conveyed the impression that its sports wagers were lawful *in*

in *Caterpillar*, however, is not limited to the complete preemption context. *See, e.g.*, *Franchise Tax Bd. of State of Cal. v. Const. Laborers Vacation Trust for S. Cal*,. 463 U.S. 1, 13–14 (1983) (stating same principle in context of substantial federal question jurisdiction); *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 858 (6th Cir. 2023) ("Although Elmcroft suggests that it will raise a federal-preemption defense under the PREP Act to Hudak's claims, the assertion of a federal defense does not transform a state claim into one that 'arises under' federal law."); *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 139 (2d Cir. 2012) ("Because the complaint's references to federal law only anticipate and refute the Shinnecock's defenses, they do not give rise to federal question jurisdiction."); *Dillon v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 756–57 (E.D. Ky. 2014) ("Even if they are substantial, federal questions triggering jurisdiction must still appear amid the elements of the plaintiff's cause of action.").

*Kentucky*, and (2) its sports wagers were not, in fact, lawful *in Kentucky*. Neither of these issues turns on the "construction of federal law." *Merrell Dow*, 478 U.S. at 808.

Kalshi's argument, with respect to Count 1, relies on language outside of the Count. Specifically, Kalshi points to allegations in the factual background section of the Complaint that Kalshi has advertised itself as offering *legal sports betting* in all 50 states. Opp. at 9-10. (citing Compl. ¶¶ 95, 102-104). The allegations in the factual background section do not inject a necessary federal issue into Count 1. In representing that it offers legal sports betting in all 50 states, Kalshi represented that it offers legal sports betting in Kentucky. The only thing that the Commonwealth needs to prove is that Kalshi misrepresented that its sports wagers are legal under Kentucky law. The Commonwealth does not need to prove, as Kalshi baselessly asserts, that Kalshi's sports wagers are unlawful in *all* 50 states. Opp. at 10. That would be a different claim than the Commonwealth's actual Count 1, which explicitly asserts that Kalshi conveyed the false impression that its sports wagers are lawful "in Kentucky."[3]

Kalshi further argues that the Commonwealth's unfairness claim under the KCPA (Count 2) rests on allegations that the sports wagers that it offers are not swaps. Opp. at 10-11. Kalshi's argument gets it backwards. The Commonwealth's unfairness claim rests on the assertion that Kalshi is running an unauthorized sports wagering operation in contravention of public policy. The Commonwealth can prove this by showing that Kalshi offers sports wagers, as understood under Kentucky law, and that Kalshi is not a licensed provider of the same. Kalshi might defend itself by

[3] Kalshi's summary of the allegations at paragraphs 95 and 102-04 omits the clear emphasis on Kalshi's representations that it offers "bets." *See*, *e.g.*, Compl. ¶ 95 ("Kalshi has run ads explicitly calling sports event contracts purchased on their platforms 'bets' and stating that its platform offers a 'legal' way to 'bet' on sports in all 50 states."). The allegations are intended to show that, while Kalshi's legal department may prefer that the company stick to the "event contract" script, Kalshi's marketing department could not help but advertise the fact that Kalshi is in the sports betting business.

arguing that its sports "event contracts" are "swaps" under the CEA and that the CEA preempts by the Commonwealth's claims. But, again, this affirmative defense of federal preemption unequivocally cannot support federal removal.

Finally, Kalshi argues, with respect to the KCPA, that the Commonwealth's unfairness claim (Count 2) necessarily implicates federal law through the allegation that Kalshi's conduct is "not outweighed by countervailing benefits to consumers." Opp. at 11 (quoting Compl. ¶ 131). As discussed in the Commonwealth's opening brief, this is not an essential element of an unfairness claim, Opening Mem. at 11, and Kalshi does not offer any law to the contrary. Thus, the Commonwealth can "prevail" on its unfairness claim without the Court having to delve into countervailing benefits. But, even if the claim did turn on this allegation, it can be satisfied without reference to any federal issue. The Commonwealth may prove, for example, that Kalshi's unlicensed sports wagering, conducted in evasion of the Commonwealth's taxation requirements for gambling operators, does not bring in revenue to the Commonwealth that outweighs Kalshi's harms. Kalshi offers no support for its assertion that the Commonwealth would necessarily have to address the "benefits of federally regulated derivatives markets" to prevail on its claim. And even if it did, Kalshi has not offered any explanation as to how a court's hypothetical consideration of those benefits would require "construction of federal law." *Merrell Dow*, 478 U.S. at 808.

### B. The Commonwealth's Loss Recovery Act Claim Does Not Raise a Federal Issue.

The Commonwealth's Loss Recovery Act claim arises under KRS 372.010 and KRS 372.040. KRS 372.010 provides:

> Every contract, conveyance, transfer or assurance for the consideration, in whole or in part, of money, property or other thing won, lost or bet in any game, sport, pastime or wager, or for the consideration of money, property or other thing lent or advanced for the purpose of gaming, or lent or advanced at the time of any betting, gaming, or wagering to a person then actually engaged in betting, gaming, or wagering, is void.

Section 372.040 provides a right of action for anyone, including the Commonwealth, to sue the winner and recover treble the value of the money lost in a transaction covered by KRS 372.010.[4] The Commonwealth can establish the elements of this claim without regard to the CEA. The Commonwealth need only prove that individuals in Kentucky lost money to Kalshi through wagers on sports.

Kalshi argues that Judge Van Tatenhove was wrong to reject its argument that the Loss Recovery Act's statutory exception for "betting, gaming, or wagering that has been authorized," KRS 372.005, supports removal. He was not. Judge Van Tatenhove correctly recognized that statutory exceptions, like KRS 372.005, are affirmative defenses. This is true under both federal and Kentucky state law. *See Dixon v. United States*, 548 U.S. 1, 13 (2006) ("[E]ven where Congress has enacted an affirmative defense in the proviso of a statute, the 'settled rule in this jurisdiction [is] that an indictment or other pleading . . . need not negative the matter of an exception made by a proviso or other distinct clause . . . and that it is incumbent on one who relies on such an exception to set it up and establish it.'") (quoting *McKelvey v. United States*, 260 U.S. 353, 357 (1922)); *Atwood v. Casey Cnty.*, 137 S.W.2d 1079, 1080 (Ky. 1940) ("[I]f the exception or proviso gives the defendant exemption from liability and is in a clause separate from the clause giving the cause of action, then it is a matter of defense and must be pleaded by the defendant.").

Kalshi does not cite any contrary authority. The two Kentucky Court of Appeals opinions on which Kalshi relies applied the KRS 372.005 statutory exception in the context of a motion to dismiss. Opp. at 14 (citing *Kirby v. Keeneland Ass'n, Inc.*, 672 S.W.3d 212 (Ky. Ct. App. 2023); *Workman v. Kentucky Downs, LLC*, 672 S.W.3d 217, 221 (Ky. Ct. App. 2022)). These courts,

[4] *See Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792 (Ky. 2020) (Commonwealth may recover under KRS 372.040).

nevertheless, treated KRS 372.005 *as a defense*, as Judge Van Tatenhove recognized. *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 596107, at *5 (E.D. Ky. Mar. 4, 2026) (explaining, with respect to *Kirby*, that "the logical reading of this holding suggests that the safe harbor provision arms defendants with a Rule 12(b)(6) defense, or its state-law equivalent").

It is well-settled that an affirmative defense, such as a statute of limitations, may be considered on a motion to dismiss if its applicability is evident from the face of the complaint. *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007). But the fact that a defense can be considered on a motion to dismiss does not make it "any less an affirmative defense." *Id.* ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense."). Judge Van Tatenhove recognized this. *Kentucky Gambling Recovery LLC*, 2026 WL 596107, at *5 ("[T]hey are, nonetheless, defenses.").

Because Kalshi has provided no authority to support the conclusion that the Commonwealth must necessarily and affirmatively prove that its claim falls outside the exception provided in KRS 372.005, or that KRS 372.005 is anything other than an affirmative defense, this section cannot support removal. *See Caterpillar*, 482 U.S. at 393.

Nor does the Middle District of Georgia's opinion in *Georgia Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), compel a departure from Judge Van Tatenhove's holding. That is because, contrary to Kalshi's contention, the statute at issue in *Georgia Gambling Recovery* is not "structurally analogous" to the Kentucky Loss Recovery Act. Opp. at 15. Unlike the Kentucky Loss Recovery Act, the Georgia loss recovery act, O.C.G.A. § 13-8-3, does not contain a separate statutory exception for "betting, gaming, or wagering that has been authorized" like what the Kentucky legislature provided in KRS 372.005. Without a separate

statutory exception, the *Georgia Gambling Recovery* court held that the issue of whether any given gambling activity was lawful was embedded in the right of action. This reasoning does not apply to the Kentucky Loss Recovery Act, where the issue of whether a gambling contract falls outside the right of action is addressed in a separate statutory exception. *See Atwood*, 137 S.W.2d at 1080.[5]

### C. The Commonwealth's Claims Do Not Require Construction of the CEA or UIGEA.

Kalshi confusingly asserts that the Commonwealth "cannot prove KalshiEX's offerings are 'sports wagering' without construing whether federal law, including the CEA and UIGEA, authorizes such contracts." Opp. at 12. The argument—which leads to the preposterous conclusion that a bookie in Louisville taking bets on a football game is not engaged in sports wagering so long as he is not acting in conformance with federal law—rests on a misinterpretation of KRS Chapter 230, which governs the Kentucky Horse Racing and Gaming Corporation ("KHRGC"). KRS Chapter 230 defines "sports wagering" as wagering "in conformance with federal law and as authorized by the corporation." In the context of Chapter 230, this is the type of "sports wagering" that may be licensed and regulated by the Horse Racing and Gaming Corporation. KRS Chapter 230 *does not say* that wagers on sporting events (e.g., a bet placed with the bookie on the football game) are not sports wagers under Kentucky law unless they conform with federal law.

### D. Exercising Jurisdiction Over the Commonwealth's State Law Gambling Claims Would Disrupt the Federal-State Balance.

Because none of the Commonwealth's claims "necessarily raise a stated federal issue," the first and most essential requirement for removal of state law claims based on federal question jurisdiction is unsatisfied. *Grable*, 545 U.S. at 314; *see also Gunn*, 568 U.S. at 258. The

[5] *See also Nessel v. KalshiEX, LLC*, 26-cv-00731-PLM (W.D. Mich. June 25, 2026) (ECF 20) (finding *Georgia Gambling Recovery* distinguishable because the Georgia statute necessarily raised the question of whether the contract was lawful under federal law).

Commonwealth, however, must also address Kalshi's argument, Opp. at 16-17, regarding the fourth requirement, which is that removal must not "disrupt[] the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Grable*, 545 U.S. at 314.

It is no small thing for the federal government to prevent a sovereign state from asserting its own laws within its own courts. *See Franchise Tax Bd. of State of Cal.*, 463 U.S. at 21 n. 22 ("[C]onsiderations of comity make [federal courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) ("Removing a state's action from its own courts must 'serve[ ] an overriding federal interest.'") (quoting *W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011)). Kalshi has failed to show that any clear rule or overriding federal interest demands removal of the Commonwealth's sovereign claims. Absent such a clear rule or overriding federal interest, removal here would unjustifiably infringe upon the "'dignity' to which states are entitled 'as residuary sovereigns and joint participants in the governance of the Nation.'" *McGraw*, 646 F.3d at 178 (quoting *Alden v. Maine*, 527 U.S. 706, 713–14 (1999)).

Removal, moreover, will have significantly more than a "microscopic effect on the federal-state division of labor." Opp. at 17 (quoting *Grable*, 545 U.S. at 309, 318). By offering unlicensed sports gambling in Kentucky, unbound by the Commonwealth's gambling laws, Kalshi is barging into a significant economic market that is a traditional area of state concern. *See Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905) ("The suppression of gambling is concededly within the police powers of a state[.]"); *United States v. Washington*, 879 F.2d 1400, 1401 (6th Cir. 1989) ("The enactment of gambling laws is clearly a proper exercise of the state's police power in an effort to promote the public welfare."). Kalshi's position, if successful, would open the door for any entity subject to CFTC jurisdiction to offer sports wagers in Kentucky, upending the Commonwealth's

carefully crafted gambling regime and turning the federal government into a primary regulator of sports gambling within the states. Whether the Commonwealth must cede regulatory authority with respect to sports gambling offered by Kalshi and other prediction markets is a matter that should be decided, as a matter of first impression, in the Commonwealth's courts. *See Tafflin v. Levitt*, 493 U.S. 455, 458–59 (1990) (under the "system of dual sovereignty," state courts "have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States").

## II. KALSHI FAILS TO SHOW THAT REMOVAL IS PROPER UNDER 28 U.S.C. § 1442(a).

Kalshi also fails to satisfy its burden of showing that this action is removable under 28 U.S.C. § 1442(a), *see Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006), as each of its arguments stretches the text of Section 1442(a) far beyond reasonable interpretation.

### A. Section 1442(a)(2) Does Not Provide Kalshi a Path to Federal Jurisdiction.

Section 1442(a)(2) permits removal only by a "property holder whose title is derived from [a federal] officer," and only when "such action . . . affects the validity of any law of the United States."[6] Kalshi falls short of both requirements. Its CFTC designations is not property held by federally derived title, and the Commonwealth's claims neither put those designations in controversy nor challenge the validity of the CEA.

[6] Kalshi suggests that Section 1442(a)(2) should be "liberally construed" in favor of removal. Dkt. No. 35 at 19. It cites the Supreme Court's decision in *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), for this proposition. But in *Watson*, the Supreme Court said only that removal under subsection (a)(1), which confers federal officers and anyone "acting under" them, should be "liberally construed." *Id.* That distinction reflects Congress's decision that "federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). That policy does not extend to *private* "property holders" under Section 1442(a)(2).

### 1. *Kalshi's Licenses Are Not "Title" to Property.*

Kalshi repeatedly paraphrases Section 1442(a)(2) as covering "property derived from" the CFTC. See Dkt. No. 35 at 5, 19–20. But Congress used a more specific formulation: a "property holder whose *title* is derived from" a federal officer. The word "title" is significant, as recognized by the court in *St. Bernard Port, Harbor & Terminal District v. Violet Dock Port, Inc.*, which held that the word "title" limits the provision to real property and rejected removal based on a federally derived contractual "property right." 809 F. Supp. 2d 524, 535 (E.D. La. 2011).

Kalshi's authorities do not support a different conclusion. In *Pasquantino v. United States*, 544 U.S. 349, 355–56 (2005), the Supreme Court held that Canada's right to uncollected excise taxes on imported liquor constitutes "property" under the wire-fraud statute. In *Med Corp. v. City of Lima*, 296 F.3d 404, 411–12 (6th Cir. 2002), and *Moody v. Michigan Gaming Control Board*, 790 F.3d 669, 678 (6th Cir. 2015), the Sixth Circuit recognized that licenses may constitute protected property interests for procedural-due-process purposes. Those decisions support the proposition that licenses may constitute property in other legal contexts, but they did not interpret Section 1442(a)(2). They do not support the conclusion that Kalshi's CFTC designation is *title* to property.

Kalshi's attempt to distinguish *St. Bernard* misses the point. Kalshi argues that the defendant in *St. Bernard* had a contractual right, whereas Kalshi's statuses as a DCM and DMO were conferred directly by the CFTC. Dkt. No. 35 at 20. But the *St. Bernard* court did not reject removal merely because the right arose by contract; it rejected removal because Section 1442(a)(2)'s use of the term "title" does not encompass an intangible "property right." 809 F. Supp. 2d at 535. For this reason, the Western District of Washington rejected Kalshi's 1442(a)(2) argument, holding that Section 1442(a)(2) was not implicated by Kalshi's "CFTC dealings." *Washington v. KalshiEX LLC*, No. C26-1062-JCC, 2026 WL 1217743, at *2 (W.D. Wash. May 5,

2026). Kalshi cannot distinguish *Washington*. While it points to recent events, including the CFTC's parallel lawsuit against the Commonwealth, Dkt. No. 35 at 21–22, those events do not provide an answer to the textual defect identified in Kalshi's Section 1442(a)(2) argument by the *Washington* court.

**2. *This Action Does Not Affect the Validity of the CEA.***

Kalshi also fails at the second part of Section 1442(a)(2), as this lawsuit does not "affect[] the validity of any law of the United States." The July 14 CFTC Order relied on by Kalshi has no bearing on the claims in the Commonwealth's complaint. The July 14 CFTC Order addressed Kalshi's emergency request to unwind *already-executed* trades involving Michigan residents and directed Kalshi to fulfill those open trades in the ordinary course. The Commonwealth has not demanded that Kalshi unwind previously executed transactions. Simply put, a transaction-specific instruction to complete *existing* trades in one state cannot be converted into a nationwide command to initiate new ones in other states.

Kalshi's broader argument fares no better. Kalshi insists that the phrase reaches any action that would "frustrate" the CEA's aims or conflict with the CFTC's views of its own jurisdiction. *See* Dkt. No. 35 at 20-22. But Section 1442(a)(2) requires more than a dispute over a federal law's meaning or preemptive scope. *See Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 669 (E.D. Tex. 1999) (holding that Section 1442(a)(2) does not cover "federal law matters [defendant] wish to raise as a defense"); *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 586 F. App'x 604, 608 (2d Cir. 2014) (holding that the plaintiff's action "does not challenge the validity of any federal law" where the plaintiff "merely contends that the various federal statutes and regulations [the defendant] has identified do not provide a defense to the [plaintiff's] claims that [the defendant] violated New York law"); *Town of Stratford v. City of Bridgeport*, 434 F. Supp. 712, 714, 715 (D. Conn. 1977) (rejecting removal where the defendant wished to raise federal law

as a defense because the state action did not attack the validity of federal law). The Commonwealth's action is not an attack on the CEA's validity. Like Kalshi's other grounds for removal, Kalshi's contention to the contrary is just a repackaged preemption defense.

*Carney v. Washington*, 551 F. Supp. 3d 1042 (W.D. Wash. 2021), relied upon by Kalshi, is inapposite. *Carney* involved actual land: a tribe's beneficial title to reservation land and tidelands derived from a federal treaty and executive order. *Id.* at 1053. The plaintiff sought to quiet title and enforce an easement over that land despite federal statutes barring state courts from adjudicating ownership or possession of Indian trust property. *Id.* at 1053–54. The suit thus concerned the federally derived title itself and sought relief that the cited federal statutes expressly foreclosed. *Id.* at 1054. Here, by contrast, there is no federally conveyed title and no federal statute that Kalshi identifies as invalidated by the Commonwealth's claims. *Carney*'s observation that federal-officer removal may sometimes rest on a federal defense, *see id.* at 1053, does not erase Section 1442(a)(2)'s separate property-title and validity requirements.

**B. Section 1442(a)(1) Does Not Provide Kalshi with a Right to Federal Jurisdiction.**

Finally, Kalshi asserts that removal is proper under 28 U.S.C. § 1442(a)(1) based on a missing entity: the CFTC. Specifically, Kalshi argues that the CFTC has demonstrated an interest in this action because of the CFTC's parallel suit against the Commonwealth. Dkt. No. 35 at 23. Because the CFTC should be in this lawsuit, the argument goes, Kalshi is able to use the CFTC's federal officer status to remove under Section 1442(a)(1). *Id.* at 22–23. Kalshi's argument fails for several reasons.

At the outset, Section 1442(a)(1)'s text forecloses Kalshi's attempt to borrow the CFTC's status. Section 1442(a)(1) permits removal in actions "against or directed to" the United States "or any agency thereof or any officer . . . of the United States or of any agency thereof . . . for or

relating to any act under color of such office." The case may be removed "by them," meaning the agency or officer. *Id.*; *see also State ex rel. Slatery v. Tenn. Valley Auth.*, 311 F. Supp. 3d 896, 902 n.8 (M.D. Tenn. 2018); *Gore v. DeAngelis*, 2025 WL 3280346, at *1 (N.D. Ohio Nov. 25, 2025). Here, the CFTC is neither a named defendant nor the object of any judicial order in this action. The complaint is against Kalshi, the requested relief runs against Kalshi, and Kalshi points to no authority allowing it to invoke Section 1442(a)(1) in the federal agency's absence. *See Nessel*, 26-cv-00731-PLM (W.D. Mich. June 25, 2026) (ECF 20) (rejecting a nearly identical argument raised by Kalshi); *Washington v. KalshiEX, LLC*, 2026 WL 1217743, at *2 (W.D. Wash. May 5, 2026) ("Defendant fails to provide the Court with authority for the proposition that a failure to join a necessary Rule 19 party, in and of itself, triggers § 1442(a)(1) removal authority if that party is the United States or its agency. . . . Nor is the Court aware of such authority.").

Calling the CFTC's absence "artful pleading" does not change the statutory requirements. The artful pleading doctrine applies only when a plaintiff disguises what is, in substance, a federal cause of action. *See Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 358 (6th Cir. 2015) (explaining artful pleading doctrine). Kalshi identifies no hidden federal cause of action in the Commonwealth's complaint. It instead identifies a party that the Commonwealth did not sue. The artful pleading doctrine does not add a defendant to the complaint or confer that nonparty's removal right onto someone else.

In any event, the CFTC is not a necessary party in this action. Under Kentucky Civil Rule 19.01 a necessary party is "one whose absence prevents the Court from granting complete relief among those already parties." *Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378, 387 (Ky. Ct. App. 2004) (quoting *Milligan v. Schenley Distillers, Inc.*, 584 S.W.2d 751, 753 (Ky. Ct. App. 1979)). Here, the Commonwealth is enforcing Kentucky's sports-wagering laws

against Kalshi—not the CFTC—and the relief sought runs only against Kalshi. The Commonwealth is not trying to enforce Kentucky's gambling laws against the CFTC. The fact that the CFTC has filed a parallel action against the Commonwealth does not mean that it is required to be a party in *this* case. *See Nessel*, No. 1:26-cv-00731-PLM-JG, Dkt. No. 20 at 11 ("Whatever interests the CFTC might have in the outcome of the case, they are insufficient to prevent courts from granting complete relief on Plaintiff's claims against Defendant. The CFTC would not be required to do anything and faces no legal exposure.").

## III. THE COURT SHOULD AWARD THE COMMONWEALTH ITS COSTS AND ATTORNEY FEES.

The Court should require that Kalshi pay the Commonwealth's costs and fees pursuant to 28 U.S.C. § 1447(c) because Kalshi lacked "an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Kalshi plainly fails to identify any federal issue raised by the Commonwealth's claims outside of Kalshi's preemption defense; its Section 1442(a) arguments find no support in text or case law, and its attempts at removal have been consistently rejected by courts, including by Judge Van Tatenhove in this District and the Western District of Michigan. *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026); *Nessel*, 26-cv-00731-PLM (W.D. Mich. June 25, 2026) (ECF 20). The Commonwealth's remand briefing should not have been required, and the imposition of costs and fees will dissuade future parties from delaying adjudication of the merits through removal arguments that have been repeatedly rejected.

## CONCLUSION

Because removal was improper under 28 U.S.C. §§ 1441(a), 1442(a)(1), and 1442(a)(2), the Court should remand this case to the Franklin Circuit Court of the Commonwealth of Kentucky,

and the Court should award the Commonwealth its costs and actual expenses, including attorney fees, incurred as a result of removal.

DATED: August 31, 2026

Respectfully submitted:

By: */s/ Alex Scutchfield*

RUSSELL COLEMAN
Kentucky Attorney General
Daniel Keiser (KBA No. 100264)
Alex Scutchfield (KBA No. 87009)
Philip R. Heleringer (KBA No. 96748)
J. Christian Lewis (KBA No. 87109)
Justin Clark (KBA No. 89313)
Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Phone: (502) 696-5300
daniel.keiser@ky.gov
alex.scutchfield@ky.gov
philip.heleringer@ky.gov
christian.lewis@ky.gov
justindclark@ky.gov

Adam J. Levitt*
Daniel R. Ferri*
Joseph Nelson, Jr.*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
jnelson@dicellolevitt.com

*Attorneys for the Commonwealth of Kentucky*

*Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ Daniel R. Ferri*
Daniel R. Ferri