UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:26-CV-00048-REW-EBA

COMMONWEALTH OF KENTUCKY, PLAINTIFF,

V. **REPORT AND RECOMMENDATION**

KALSHIEX LLC, *et al*., DEFENDANTS.

*** *** *** ***

This matter is before the Court on the motion of Plaintiff, The Commonwealth of Kentucky, *ex rel.* Attorney General, Russell Coleman (Commonwealth), requesting an Order remanding the underlying action to the Franklin Circuit Court. [R. 29]. The Defendants filed a response in opposition, [R. 35], to which the Commonwealth filed a Reply. [R. 41]. Therefore, this matter is ripe for review.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 17, 2026, the Commonwealth filed a Complaint against Defendants Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, Kalshi Trading LLC, (collectively, Kalshi), Robinhood Markets, Inc., Robinhood Derivatives LLC, Webull Corporation, and Coinbase Financial Markets, Inc. in the Franklin County Circuit Court. [R. 1-3 at pg. 1]. As relevant to the underlying motion, KalshiEX LLC, is a limited liability company and a wholly owned subsidiary of Kalshi Inc. [*Id*. at pg. 3]. The Commonwealth alleges that in concert with other Kalshi entities, KalshiEX LLC advertises and operates an online sports betting operation in the Commonwealth of Kentucky without the licensing approval of the Kentucky Horse Racing and Gaming Commission. [*Id*. at pgs. 3-4]. Specifically, the Commonwealth alleges that Kalshi operates a

"prediction market" through which Kentucky residents can engage in unlicensed sports gambling. [*Id.* at pg. 4]. The market is an online trading platform, through which users can place a wager on the outcome of a sporting event. [*Id.*]. The Commonwealth asserts the following claims:

> (1) Kalshi and the other Defendants violated the Kentucky Consumer Protection Act (KCPA), KRS 367.100 et seq, by conveying the false impression that their unlicensed sports-wagering operations were lawful in Kentucky (Counts 1, 5, 9, and 13);
> (2) Kalshi and the other Defendants further violated the KCPA by unfairly and unconscionably operating sports gambling enterprises in blatant disregard for Kentucky law (Counts 2, 6, 10, and 14);
> (3) Under the Kentucky Loss Recovery Act, KRS 372.005 et seq., the sports bets that Kentuckians have placed on Kalshi's and the other Defendants' platforms are void and the Commonwealth is entitled to money lost gambling (Counts 3, 7, 11, and 15); and
> (4) Kalshi and the other Defendants are operating illegal gambling devices in contravention of KRS 528.010 et seq. (Counts 4, 8, 12, and 16).

[R. 29-1 at pg. 4].

Less than 48 hours after the Commonwealth filed its complaint, Kalshi filed a notice removing the matter to the Eastern District of Kentucky. [R. 1]. Therein, Kalshi argues that removal was proper under 28 U.S.C. § 1441, which states: "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Kalshi claims there are several independent bases for federal jurisdiction. [*Id.*]. The Commonwealth now seeks to remand this action back to the Franklin County Circuit Court, arguing that this Court lacks subject matter jurisdiction. [*See* R. 29].

## Legal Standard

A defendant may remove a civil action to federal court if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A federal court generally has original

jurisdiction where a federal question is raised or where diversity exists. Diversity exists where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" parties who are "citizens of different states." 28 U.S.C. § 1332(a)(1). The removing party "has the burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met." *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010) (citing *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)).

## ANALYSIS

In its response in opposition, Kalshi argues that there are three independent bases for federal jurisdiction in this case: (1) the Commonwealth's claims necessarily raise disputed and substantial issues of federal law that should be resolved by this Court; (2) removal is proper under 28 U.S.C. § 1442(a)(2) because "KalshiEX's and Kalshi Klear's designations as a [designated contract markets (DCM)] and a designated clearing organization (DCO), constitute property derived from the CFTC", and "the Commonwealth's action directly affects the validity of the [Commodity Exchange Act (CEA)];" and (3) under Kentucky Civil Rule 19.01, the Commonwealth was required to name the Commodity Futures Trading Commission (CFTC)—a necessary party—and its omission of the CFTC cannot defeat removal under 28 U.S.C. § 1442(a)(1). [R. 35 at pgs. 1-4]. Thus, Kalshi argues that removal was proper and that the Commonwealth's motion to remand should be denied. [*Id.*]. As it is Kalshi's burden to prove removal is proper, *Cleveland Hous. Renewal Project*, 621 F.3d at 559 (citing *Hertz Corp.*, 559 U.S. at 77), the undersigned will address their arguments in turn below.

## I.

First, Kalshi argues that this Court has jurisdiction over the underlying action because the Commonwealth's claims "necessarily raise disputed and substantial federal questions." [R. 35 at

pg. 8]. Generally, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule requires courts to "examine the well pleaded" allegations of the complaint and ignore potential defenses. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). The plaintiff is the "master of his complaint," and thus, any "state law claim cannot be 'recharacterized' as a federal claim for the purposes of removal." *Loftis v. United Parcel Service, Inc*., 342 F.3d 509, 515 (6th Cir. 2003) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Accordingly, "a case may not be removed to federal court solely on the basis of a federal defense, even where the plaintiff anticipates the defense in their complaint and even where both parties concede that the federal defense is the only true question." *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-00054-GFVT, 2026 WL 596107, at *3 (E.D. Ky. Mar. 4, 2026) (first citing *Franchise Tax Bd. of Cal. V. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13–14 (1983); and then citing *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (collecting cases)).

However, there are exceptions to the well-pleaded complaint rule. The exception that Kalshi relies on here is the substantial-federal-question doctrine, which holds that "a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under the state law depends on the validity, construction, or effect of federal law." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (internal citations omitted). Specifically, Kalshi relies on *Grable & Sons Metal Products, Inc., v. Darue Engineering & Mfg*., 545 U.S. 308, 310-11 (2005), which outlined a new framework for determining whether a substantial federal question exists, explaining that federal courts have jurisdiction over state law claims that "implicate significant federal issues." After

*Grable*, the substantial-federal-question doctrine developed into having three requirements: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski*, 501 F.3d at 568 (internal citations omitted). The Supreme Court has also suggested that jurisdiction under *Grable* is appropriate *only* where the case "presents a nearly pure issue of law, one that could be settled once and for all and would govern numerous [similar] cases." *Empire Healthchoice Assur. Inc., v. McVeigh*, 547 U.S. 677, 700 (2006).

As discussed, the Commonwealth alleges that Kalshi violated the KCPA, KRS 367.100 et seq.; the Kentucky Loss Recovery Act, KRS 372.005 et seq.; and are operating illegal gambling devices in contravention of KRS 528.010 et seq. [R. 29-1 at pg. 4]. As their complaint is solely comprised of state law claims, under the well-pleaded complaint rule, the Commonwealth has not presented a federal question on the face of the complaint. Yet, Kalshi claims that federal jurisdiction exists because all the factors under the test for the substantial- federal-question-doctrine are met for several of the Commonwealth's claims.

***KENTUCKY CONSUMER PROTECTION ACT CLAIMS***

First, the Court will examine Kalshi's argument that the Commonwealth's first two claims, both of which arise under the Kentucky Consumer Protection Act, raise a federal issue. [R. 1-3 at pgs. 34-36]. The first element of the substantial-federal-question doctrine is that the state-law claim must necessarily raise a disputed federal issue. *Mikulski*, 501 F.3d at 568 (internal citations omitted). A court looks to the "elements" of the plaintiff's claim and asks if any element requires the plaintiff to apply federal law to the "facts of [its] case" in order "[t]o prevail." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Count one of the Commonwealth's complaint alleges that Kalshi "repeatedly conveyed the false, deceptive, and misleading impression that the sports wagers that they offer through their prediction market are lawful, and not void, in Kentucky." [R. 1-3 at pg. 35]. Kalshi explains that throughout the Complaint—largely in the factual background section—the Commonwealth challenges Kalshi's statements that it is "legal in all 50 states" as being false, deceptive, and misleading. [*See* R. 1-3 at pgs. 27, 35]. Because Kalshi stated that it's conduct was legal in all 50 states, it argues that to prove count one, the Commonwealth must "prove that Kalshi's event contracts *are not legal in all 50 states*." [R. 35 at pg. 10] (emphasis in original). Further, Kalshi argues that for the Commonwealth to succeed, it would require "the Court to determine whether KalshiEX's offerings are lawful, nationwide, under federal law—a determination that cannot be made without interpreting the CEA and [the Commodity Futures Trading Commission (CFTC) regulations]." [*Id.*].

The Commonwealth argues that its "allegations in the factual background section do not inject a necessary federal issue into Count 1." [R. 41 at pg. 3]. The Commonwealth explains that when Kalshi represented that it offers legal sports betting in all 50 states, it also represented that it offers legal sports betting in Kentucky. [*Id.*]. Thus, the Commonwealth argues that to prove count one, it *only* needs to prove that Kalshi conveyed the false impression that its sports wagers were lawful in Kentucky. [*Id.*]. The undersigned agrees. Count one of the Complaint only asks one question: whether Kalshi misrepresented that its sports wagers were legal in Kentucky in violation of the Kentucky Consumer Protection Act. [*See* R. 29-1 at pg. 4]. The only thing the Commonwealth is charged with proving is that Kalshi misrepresented that its sports wagers were legal *in Kentucky*, not that they were unlawful in all 50 states. Thus, as no element of the

Commonwealth's claim requires application of federal law, a disputed federal issue has not been raised. *Gunn*, 568 U.S. at 258.

Kalshi further argues that count two of the Commonwealth's Complaint also raises a federal issue. Count two of the Complaint alleges that Kalshi violated the Kentucky Consumer Protection Act by "engaging in unfair acts and practices in the Commonwealth of Kentucky through the unauthorized offering and facilitation of sports gambling within Kentucky." [R. 1-3 at pgs. 35-36]. First, Kalshi explains that when establishing the facts to support count two, the Commonwealth "misleadingly portrays its products as 'swaps' or 'event contracts,' when they are allegedly, instead, prohibited 'bets.'" [R. 35 at pg. 10]. Kalshi argues that to resolve count two, the Court must construe federal law—specifically the CEA and CFTC—to define these terms, because if the "bets" are described as "event contracts" or "swaps" under the CEA, the Commonwealth's claims would be preempted by the CEA. [*Id.*] To support this argument, Kalshi relies on a Third Circuit Court of Appeals decision, which held, although not the basis for removal, that the CEA "preempts otherwise applicable state laws that purport to regulate sports-related event contracts on CFTC-licensed DCMs." [*Id.*] (first citing *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 228 (3d Cir. 2026), *aff'g* 2025 WL 1218313 (D.N.J. Apr. 28, 2025); then citing *United States v. Minnesota*, --- F. Supp. 3d ---, 2026 WL 2150211, at *14-16 (D. Minn. July 27, 2026) (holding that the CEA's grant of "exclusive jurisdiction" to the CFTC over swaps traded on DCMs expressly preempts Minnesota's prediction market statute); then citing *KalshiEX LLC v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026), appeal docketed, No. 26 5235 (6th Cir. Mar. 23, 2026); and then citing *KalshiEX LLC v. Johnson*, --- F. Supp. 3d ---, 2026 WL 1223373, at *3 (D. Ariz. May 5, 2026)).

The Commonwealth disagrees with Kalshi's argument and instead claims that to be successful on count two, it would only have to prove that Kalshi offers sports wagers, as defined under *Kentucky* law, and that Kalshi is not licensed to do so. [R. 35 at pg. 3]. The Court agrees. Because count two charges Kalshi with a violation of Kentucky law, the relevant inquiry is not determining whether the "bets" are "swaps" or "event contracts" under federal law—it is whether they are "sports wagers" as defined under Kentucky law.

Furthermore, as discussed in the Commonwealth's supplemental authority, [R. 66], the Sixth Circuit's recent decision in *KalshiEX LLC v. Schuler*, Nos. 26-3196, 26-5235 (6th Cir. September 25, 2026) answered an unsettled issue in this Circuit, holding that Kalshi's sports-event contracts are not "swaps" under the CEA. Further, the Court held that, even assuming sports-event contracts were swaps, the CEA neither expressly nor impliedly preempts state sports-gambling laws. *Id*. at 16, 19–28. Therefore, the purported federal question—whether the sports-event contracts fall within the CFTC's exclusive jurisdiction—has now been resolved by the Sixth Circuit and the remaining issues only concern Kentucky law—making State Court the appropriate forum. [R. 66 at pg. 2].

Further, even if Kalshi was to still bring a preemption argument, "federal preemption is an affirmative defense upon which the defendants bear the burden of proof." *Brown v. Earthboard Sports USA, Inc*., 481 F.3d 901, 912 (6th Cir. 2007) (quoting *Fifth Third Bank v. CSX Corp*., 415 F.3d 741, 745 (7th Cir. 2005)). And it is well settled "that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Therefore, the preemption argument cannot justify removal.

Finally, Kalshi argues, with respect to the Commonwealth's claims brought under the Kentucky Consumer Protection Act, that count two necessarily implicates federal law through the allegation that Kalshi's conduct "is not outweighed by countervailing benefits to consumers." [R. 35 at pg. 11]. Kalshi explains that "by pleading the absence of 'countervailing benefits,' the Commonwealth put those benefits at issue, and the CEA-recognized benefits of federally regulated derivatives markets (price discovery, hedging, uniform national access, 7 U.S.C. § 5(a)) cannot be evaluated without construing federal law." [*Id.*]. This argument is also unpersuasive.

Under Kentucky law, the Commonwealth is not required to prove the challenged conduct is not outweighed by countervailing benefits to consumers to succeed on its Consumer Protection Act claim. *See* KRS 367.170 ("unfair shall be construed to mean unconscionable"); *see also Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 485 (Ky. Ct. App. 1978) (analyzing unfairness claim without reference to whether challenged conduct is outweighed by countervailing benefits to consumers). Further, even *if* the claim did turn on this allegation, the Commonwealth could satisfy the requirement without reference to federal law. For example, the Commonwealth states that it could show that Kalshi's alleged unlawful conduct was "conducted in evasion of the Commonwealth's taxation requirements for gambling operators [and] does not bring in revenue to the Commonwealth that outweighs Kalshi's harm." [R. 41 at pg. 4]. Therefore, no federal law is necessarily implicated in count one or two of the Commonwealth's complaint.

**INJUNCTIVE RELIEF**

Next, Kalshi argues that the Commonwealth cannot prevail on its claims and obtain injunctive relief against "sports wagering" without proving that the sport event contracts in question are illegal gambling. [R. 35 at pg. 11]. Kalshi explains that "the definition of 'sports wagering' under Kentucky law requires a showing that the wagering be conducted both 'in

conformance with federal law and as authorized by the corporation pursuant to this chapter.'" [*Id*. at pg. 12 (citing Ky. Rev. Stat. § 230.210(42))]. Thus, Kalshi argues that the "Commonwealth therefore cannot prove KalshiEX's offerings are 'sports wagering' without construing whether federal law, including the CEA and UIGEA, authorizes such contracts—i.e. that they are 'in conformance with federal law.'" [*Id*.]. This argument is not well taken.

KRS Chapter 230 defines "sports wagering" as wagering "in conformance with federal law and as authorized by the corporation." Ky. Rev. Stat. § 230.210(42). Under Chapter 230, this is the type of "sports wagering" that may be licensed and regulated by the Horse Racing and Gaming Corporation. *See id*. As the Commonwealth explains, "KRS Chapter 230 *does not say* that wagers on sporting events (e.g., a bet placed with the bookie on the football game) are not sports wagers under Kentucky law unless they conform with federal law." [R. 41 at pg. 13] (emphasis in original). Here, the Commonwealth argues that Kalshi is operating an online sports betting operation in the Commonwealth of Kentucky *without the licensing approval* of the Kentucky Horse Racing and Gaming Commission. [R. 1-3 at pgs. 3-4] (emphasis added). Thus, the undersigned agrees with Kalshi that for the Commonwealth to prevail on its claims and obtain injunctive relief against "sports wagering," it must prove that the sport event contracts in question are illegal gambling. However, under Kentucky law, it is enough for the Commonwealth to establish that Kalshi is operating without the licensing approval of the Kentucky Horse Racing and Gaming Commission. *See* Ky. Rev. Stat. § 230.210(42). Therefore, because the Court is not required to consider federal law, no federal issue has necessarily been raised.

***LOSS RECOVERY ACT CLAIM***

Kalshi also argues that the Commonwealth's claims brought under the Loss Recovery Act necessarily implicate federal law. [R. 35 at pg. 13]. The Commonwealth asserts claims under

Kentucky's Loss Recovery Act, which renders gambling transactions void, *see* Ky. Rev. Stat. § 327.010, but includes an exemption for "betting, gaming, or wagering that has been authorized, permitted or legalized." Ky. Rev. Stat. § 3.27.005. Kalshi argues that the exemption language raises a federal question "because whether KalshiEX's event contracts have been 'authorized, permitted, or legalized' requires interpreting the CEA and the CFTC's regulatory actions." [R. 35 at pg. 13].

This exact argument was rejected by District Judge Gregory F. Vantatenhove in a recent Order remanding a private party's Loss Recovery Act Claim against Kalshi to state court. *See Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-CV-00054-GFVT, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026). Therein, Judge VanTatenhove discussed that when statutes have exemptions such as the Kentucky Loss Recovery Act, they constitute affirmative defenses. *Id.* at *5 (quoting *Cunningham v. Cornell University*, 604 U.S. 693, 701 (2025)). Judge VanTatenhove went on to explain that while Kalshi raised compelling defenses to the Plaintiff's state law claims, "they are, nonetheless, defenses." *Id.* Judge VanTatenhove explained that "a case may not be removed to federal court solely on the basis of a federal defense, even where the plaintiff anticipates the defense in their complaint and even where both parties concede that the federal defense is the only true question." *Id.* at *3 (citing *Franchise Tax Bd. of Cal.*, 463 U.S. at 13–14).

While Kalshi argues that Judge VanTatenhove erred in his decision, it fails to provide any binding authority to the contrary. Nor does Kalshi provide any other compelling reason for this Court to deviate from Judge VanTatenhove's decision. Additionally, the undersigned agrees with Judge VanTatenhove's analysis that the exemptions in the Kentucky Loss Recovery Act relied on by Kalshi constitutes affirmative defenses, and that a case may not be removed to federal court solely on the basis of a federal defense. Therefore, Kalshi has failed to meet its burden of

establishing that the Commonwealth's claims necessarily implicate federal law. This case "cannot be squeezed int the slim category [of cases that] *Grable* exemplifies." *Mikulski*, 501 F.3d 555 at 574 (quoting *Empire Healthchoice*, 547 U.S. at 701).

**II.**

Next, Kalshi argues that removal is proper under 28 U.S.C. § 1442(a)(2). [R. 35 at pg. 17]. This "rarely invoked" statute requires Kalshi to establish that: (1) it is a "property holder whose title is derived from [a United States] officer" and (2) that the Commonwealth's action "affects the validity of any law of the United States." 28 U.S.C. § 1442(a); *Vanouwerkerk v. Owens–Corning Fiberglass Corp.,* 1999 WL 335960, *13 (E.D. Tex. 1999) ("[I]t appears that 28 U.S.C. § 1442(a)(2), the federal title dispute statute, is a rarely invoked statute.").

Kalshi claims that their "licenses to operate as a [designated contract market] and [designated clearing organization], respectively, were approved by the CFTC pursuant to the CEA, *see* 7 U.S.C. §§ 7, 7a-2(c), and those federally issued licenses constitute property." [R. 35 at pg. 18]. Kalshi explains that those licenses established "federal operating rights: the right to provide a federally regulated market and clearing infrastructure for swaps, subject to statutory revocation procedures and federal judicial review." [*Id.*]. Kalshi claims that the Sixth Circuit has held that federally issued licenses are recognized property interest, and thus, they are property holders under 28 U.S.C. § 1442(a)(2) [*Id.* (first citing *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002); and then citing *Moody v. Mich. Gaming Control Bd.*, 790 F.3d 669, 673 (6th Cir. 2015))].

The Court agrees with Kalshi that the Sixth Circuit has held that federally issued licenses are recognized property interest. However, the Sixth Circuit analyzed the issue for procedural-due-process purposes—it did not analyze § 1442(a)(2). *See Med Corp.*, 296 F.3d at 411–12; *Moody*, 790 F.3d at 678. Courts that *have* analyzed § 1442(a)(2)'s use of the term "title," have found that

it does *not* encompass intangible property rights. *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, LLC, 809 F. Supp. 2d 524, 535 (E.D. La. 2011) (emphasis added). In fact, the Western District of Washington rejected Kalshi's 1442(a)(2) argument, holding that Section 1442(a)(2) was not implicated by Kalshi's "CFTC dealings." *Washington v. KalshiEX LLC*, No. C26-1062-JCC, 2026 WL 1217743, at *2 (W.D. Wash. May 5, 2026) ("In every instance where courts have applied § 1442(a)(2), they did so in instances where real—not intangible—property was at issue.") first citing *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 535; then citing *Town of Davis v. W. Virginia Power and Transmission Co., Inc.*, 647 F. Supp. 2d 622, 624 (N.D.W. Va. 2007); and then citing *Benitez-Bithorn v. Rossello-Gonzalez*, 200 F. Supp. 2d 26, 28–31 (D.P.R. 2002)).

Kalshi has failed to provide the Court with any compelling reason to adopt its novel argument. Instead, the Court finds the analysis from the Eastern District of Louisiana and the Western District of Washington persuasive and agrees with their holdings that § 1442(a)(2) does not encompass intangible property rights. Therefore, jurisdiction is not proper under § 1442(a)(2).

**III.**

Finally, Kalshi argues that under Kentucky Civil Rule 19.01, the Commonwealth was required to name the CFCT as a party. [R. 35 at pg. 21]. Had it complied with the rule, Kalshi claims that removal would be proper under 28 U.S.C. § 1442(a)(1). [*Id.*]. Section 1442(a)(1) permits removal in actions "against or directed to" the United States "or any agency thereof or any officer . . . of the United States or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

Like several of Kalshi's other arguments, this argument has been rejected by other Courts. A District Court in the Eastern District of Washington held that Kalshi "fail[ed] to provide the

Court with authority for the proposition that a failure to join a necessary Rule 19 party, in and of itself, triggers § 1442(a)(1) removal authority if that party is the United States or its agency." *Washington,* 2026 WL 1217743, at *2. The Court further stated that it was unaware of such authority, and that Kalshi's "argument on this issue has been rejected by other courts on similar grounds (albeit not identical)." *Id*. (citing *Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX*, 2026 WL 579364, slip op. at 5 (D. Nev. 2026)). Similarly, here, Kalshi has failed to provide the Court with authority to support its argument that failure to join a necessary Rule 19 party, in and of itself, triggers § 1442(a)(1) removal authority.

Furthermore, to the extent that Kalshi argues that the CFTC is a necessary party, that would be addressed in this Court under the Federal Rule of Civil Procedure 19, not a Kentucky Court rule. *See Hayes v. Equitable Energy Res. Co*., 266 F.3d 560, 566 (6th Cir. 2001) ("The Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts, regardless of whether jurisdiction is based on federal question or diversity of citizenship."). But applying Rule 19 would require the Court to have subject matter jurisdiction over the case, which it would only have if the case were properly removed—which the Court has found that it has not. At least one other district court has rejected an argument similar to Kalshi's based on Rule 19. *See Washington,* 2026 WL 1217743, at *2.

Instead, the correct course of action for Kalshi would have been to present this issue at the state court to remedy the alleged necessary party issue. Then, if successful, "the CFTC could have joined the case, and it could have chosen whether to remove the case under § 1442." *Nessel v. KalshiEX, LLC*, 26-cv-00731-PLM (W.D. Mich. June 25, 2026) (R. 20). Regardless, the decision would not have been Kalshi's to make, and therefore removal under § 1442(a)(1) is not proper. *Id*.

**IV.**

The Commonwealth also requests that the Court Order Kalshi to pay the Commonwealth's costs and fees incurred as a result of removal. [R. 29-1 at pg. 19]. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that the fee provision in the federal removal statute does not create a presumption in favor of awarding or denying fees of remand. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138–39 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id*. at 141.

The Court will recommend the Commonwealth's request be denied. Many of Kalshi's arguments, while unsuccessfully brought in other circuits, have not yet been addressed by the Sixth Circuit. For example, even though now decided, at the time of briefing this issue, the Sixth Circuit had not expressly ruled on whether the CEA expressly preempted state sports-gambling laws. While the Sixth Circuit has now ruled on the issue, *see KalshiEX LLC v. Schuler,* Nos. 26-3196, 26-5235 (6th Cir. September 25, 2026), that case was not decided until after the underlying motion was fully briefed. Thus, at least some of Kalshi's arguments were not objectively unreasonable, and therefore Commonwealth is not entitled to costs and fees.

## RECOMMENDATION

Having considered the matter, and being otherwise sufficiently advised,

**IT IS RECOMMENDED** that the Plaintiff's Motion to Remand, [R. 29], be **GRANTED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must

be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed October 14, 2026.

**Signed By:**
***Edward B. Atkins*** EBA
**United States Magistrate Judge**